## Robison *et al. versus* Tyson.

*Averment in declaration that "plaintiff was ready and willing to receive and pay," must be proven.—Purchaser of oil in bond, duty of, under "Revenue Law."—Proper mode of presenting points to court on questions of evidence.*

1. The averments in a declaration that the "plaintiff was ready and willing" to receive goods and pay for them on delivery and shipment, is a material one and necessary to be proved.

2. Where oil, at a stipulated price, was to be delivered at the cars of a railroad depot, it was *held*, that a plaintiff, who sued for non-delivery of the same, must, in order to recover, prove his readiness to receive and pay for it.

3. Where oil is purchased in bond, the purchaser is under no obligation to give the bond required from the owner by the 47th section of the Internal Revenue Laws.

ERROR to the Common Pleas of *Allegheny county.*

This was an action of *assumpsit*, by Cornelius Tyson against the firm of Robison, Hill & Co., to recover damages for the non-delivery of one hundred barrels of refined oil, alleged to have been purchased by the plaintiff from the defendants, on the 7th of November 1862.

The plaintiff, in his declaration, averred that on or about the 7th day of November, A. D. 1862, at the city of Pittsburgh, in the county of Allegheny, the said Cornelius Tyson, at the special instance and request of the aforesaid defendants, the said firm of Robison, Hill & Co. bargained and agreed to buy of and from the said firm of Robison, Hill & Co. a large quantity, to wit, one hundred barrels of oil, upon the following terms, that is to say: that such oil should be refined—gravity 45, vaporized 120, and should be delivered for the said Cornelius Tyson within a reasonable time on board the Pennsylvania Railroad cars, free of charge, at the rate of 35 cents per gallon for each and every gallon of oil, and at the rate of $2 for each and every barrel so delivered; and thereupon, in consideration of the premises, that the said Cornelius Tyson had agreed and contracted with the said firm of Robison, Hill & Co. to pay them at the rate aforesaid; and also, in consideration that the said Cornelius Tyson, at the like special instance and request of the said firm of Robison, Hill & Co. had then and there undertaken and promised the said firm of Robison, Hill & Co. to accept a delivery and shipment in the said cars of the said quantity of oil, and to pay the said firm of Robison, Hill & Co. for the same at the rate in that behalf aforesaid, the said firm of Robison, Hill & Co., on or about the 7th day of November, A. D. 1862, at Pittsburgh, undertook, and then and there faithfully promised the said Cornelius Tyson, that they, the said firm of Robison, Hill & Co. would,

[Robison *et al. v.* Tyson.]

within a reasonable time then next following, procure to be delivered and shipped for him, the said Cornelius Tyson, in manner aforesaid, the said quantity of oil, of such character and description as hereinbefore mentioned; and although a reasonable time for that purpose has long since elapsed, *and the said Cornelius Tyson was always, during that time, and until the commencement of this action, ready and willing to have accepted a delivery and shipment of such oil as aforesaid, and to have paid for the same in that behalf as aforesaid,* whereof the said firm of Robison, Hill & Co. then had notice; yet the said firm of Robison, Hill & Co., not regarding their said promise and undertaking, but contriving and intending to deceive and defraud the said Cornelius Tyson, did· not, nor would (although often requested so to do), within such reasonable time as aforesaid, or at any time since, procure to be delivered or shipped for the said Cornelius Tyson in manner aforesaid, or otherwise, the said quantity of oil, of such character and description as hereinbefore mentioned, or any other oil whatsoever, but, on the contrary thereof, the said firm of Robison, Hill & Co. hath hitherto wholly refused, and still refuses so to do; by means, &c., to the damage, &c.

Other counts were added, substantially the same as the foregoing.

The plaintiff gave evidence to show that there was a contract of sale of one hundred barrels of refined oil, gravity 45, vaporized 120 degrees, at 35 cents per gallon, and $2 for each barrel, in bond, for exportation, and to be delivered at the cars of the Pennsylvania Railroad Company. No consideration was paid by plaintiff, nor any permit obtained by him from the collector for the removal of the oil, nor any bond given to the United States to secure the payment of the internal revenue tax in case the oil should not be exported. There was no evidence of any demand made for the delivery of the oil, or of a tender of the price, or that the oil was not delivered according to the contract. Upon the trial of the cause the defendant's counsel requested the court to charge the jury as follows:—

1. That the plaintiff cannot recover, upon the pleadings and evidence in this case.

2. That there is no evidence in the cause tending to prove a breach on the part of the defendants of the alleged contract or contracts in the said plaintiff's declaration set forth.

3. That if the jury believe from the evidence that the one hundred barrels of oil, which are the subject of controversy in this action, were purchased in bond, and if the plaintiff has failed to show a tender of the price and a satisfactory bond, according to the 47th section of the Internal Revenue Law, and a demand for the oil, and a refusal of defendants to deliver the oil upon

[Robison *et al. v.* Tyson.]

request or demand so made, then the plaintiff cannot recover in this action.

These points were answered in the negative, which were the errors assigned by defendants.

*Marshall & Brown,* for plaintiffs in error.—The evidence on part of the plaintiff tended to prove that the oil was sold "in bond," at what dealers call "short price," and for export, and if not exported, the purchaser was to pay the government tax of 10 cents per gallon. The government collector requires payment of this duty or tax, or a bond in lieu of payment, before a permit is granted for the removal of the oil. The Act of Congress, entitled "An act to provide internal revenue to support the government," &c., § 47, provides that "oil may be removed for the purpose of being exported (after inspection) according to the provisions of this act, upon and with the written permission of the collector or deputy collector of the district, without payment of the duties thereon previous to such removal, the owner thereof having first given bond to the United States, with sufficient sureties, in the manner and form and under regulations prescribed by the commissioner of internal revenue, and in at least double the amount of said duties, to export the said spirits or oil, or pay the duties thereon within such time," &c.

"Provided, that any person desiring to give such bonds shall first make oath before the collector or deputy collector to whom he may apply for a permit to remove any such spirits or oil, in manner and form to be prescribed by said commissioner, that he intends to export such liquors or oil, and that he desires to obtain said permit for no other purpose whatever," &c. The contract of the parties must be construed as being made with reference to the law; and neither party should be visited with damages for observing the requirements of the law. The plaintiff below purchased the oil in bond and for export; therefore he was bound not only to pay the agreed price for the oil, but also to make oath before the collector of the district and obtain a permit for the removal of the oil for exportation, and give a satisfactory bond to the United States, conditioned that he would export it within a given time, or pay the duty or tax of ten cents per gallon. The plaintiff having failed to prove any of these matters, the court should have charged the jury as requested in the defendants' third point. If Tyson was the purchaser or owner of the oil, he purchased it subject to the provisions of the Internal Revenue Law, and he was not entitled to have it removed or shipped until after compliance with the terms of that law.

The plaintiff declared upon the alleged contract, and assigned for breach that the defendants did not nor would deliver the said

[Robison *et al. v.* Tyson.]

one hundred barrels of oil, although often requested so to do, but refused and still refuse so to do. No evidence was offered tending to show whether or not the contract had been performed by either party.

There was no evidence tending to prove a breach of the alleged contract on the part of the defendants, nor any evidence that the plaintiff paid or offered to pay the price of the oil, or that he had performed any of the things necessary to be done by him in order to obtain a permit for its removal or exportation. In fact, the plaintiff wholly failed to prove the contract alleged in his declaration.

It was sought to be established by the loose declarations of plaintiff's agent, in the presence of Mr. Robison and the witness McHenry, but the evidence was vague, uncertain, and indefinite. The most that could be educed from the evidence, as constituting the plaintiff's case, was this: that he purchased one hundred barrels of oil at 35 cents per gallon, in bond for exportation, deliverable within a few days, or when the defendants would "have time" to deliver it, after the 7th of November 1862; and that oil continued to rise in price or value from that date until it had reached about 50 or 55 cents on the 17th of November. Suit was brought on the 28th of the same month. Upon this evidence the plaintiff claimed damages corresponding to the increased price of oil, and, under the ruling of the court, obtained a verdict for $600. We think that the evidence on part of the plaintiff below did not make a *primâ facie* case, and the learned judge should have instructed the jury, as requested in the first point, that the plaintiff could not recover upon the pleadings and evidence in the cause.

*S. A. & W. S. Purviance,* for defendant in error.—The plaintiffs in error rely mainly upon their alleged inability, as not being the actual exporters of the oil, to give the bond required by government, and base their idea of a want of power to give said bond on the fact that the person giving bond must, before he is allowed to remove the oil, make oath before the collector "that he intends to export the oil, and that he desires to obtain said permit for no other purpose whatever." This does not, however, necessarily imply that such person must be the actual exporter of the oil himself; the oath is not "that he himself will export," but "that he intends to export," and as proof of his good faith in taking the oath he gives a bond to government that he will do so, or failing in doing so, that he will pay the tax. If Tyson told Robison, Hill & Co. that he intended the oil for exportation, and they sold to him under that belief, *i. e.,* they had a right to consider themselves the exporters of the oil, so far as the question of oath was concerned, and could conscientiously make it.

10 Wr.—19

It is at best a mere formal declaration of purpose to export, intended probably to protect the collectors in oil districts from being harassed with giving permits to and taking bond from men who, seeking merely to take advantage of some other home market, would avail themselves, if they had not to make oath of a probable intention to export, of that method of getting their oil to the desired market. The bond is the real security which government looks to, and the manner in which it is drawn, *i. e.*, providing for the payment of the duties on the oil, in case it is not exported (after the person giving the bond has sworn that he intended exporting), shows that the oath is not regarded as in itself essential. Were it so, the bond which immediately follows it would hardly provide for the contingency of non-exportation, the happening of which, the oath (if the plaintiffs' in error view of its binding force and strictness be taken), absolutely and positively forbids.

A recent decision in reference to exportation of distilled spirits and coal-oil, made by the commissioner· of internal revenue, relieves this question from all difficulty. See Estee's Excise Laws, p. 222.

The power and right to give bond being thereby vested in the manufacturer and distiller, provided he or they are owners of the oil, as well as in any purchaser, it only remains to consider the question of ownership. By the terms of this contract the oil was to be delivered on board the Pennsylvania Railroad cars at Pittsburgh. Up to the time of said delivery Robison, Hill & Co. were the absolute owners of the oil; at and after the delivery on board the cars Tyson was the owner. But the delivery (which would divest the title of Robison, Hill & Co.) involved the removal of the oil from the premises where distilled, whether from the distillery of Robison, Hill & Co., or that of any other distiller, and before that could be done a bond must be given, or the tax be paid. We agree with the plaintiffs in error "that the contract must be construed as having been made with reference to the law," and therefore the parties not having, as the evidence shows, specially provided as between themselves for the giving of the bond, and it being a condition precedent, and one which must be performed by some person before the terms of the contract could be complied with by Robison, Hill & Co., and the excise law allowing them, if owners, to give bonds, and they actually being the owners of the oil, it became a part of their contract either to bond the oil or pay the tax—in a word, to do everything that would enable them to deliver the oil as per terms of contract. Tyson's duty was a simple one, viz., to accept a delivery of the oil on the cars, and pay for it when delivered or tendered. Robison, Hill & Co.'s duty was to deliver the oil, and that duty carried along with it a performance of all the essentials that pertain to a valid, legal delivery. Their present duty

[Robison *et al. v.* Tyson.]

on this point (it being decided that they had power under the Excise Law to furnish the bond), differs in no respect from that of a vendor who has covenanted to deliver a deed for land sold, and who has made no special arrangements with his vendee in reference to his, the vendee's, paying for the stamp on the deed. In that case, furnishing the stamp, which perfects the deed and adds to a valid ·delivery, becomes a part of the vendor's contract, just as in this instance furnishing a bond which would promote a delivery of the oil, becomes a part of the contract of Robison, Hill & Co.

Had the contract been for oil.delivered at distillery of plaintiffs in error, and nothing, as in this case, said by the parties about the bond, though it were distinctly understood that the oil was intended for exportation, then the duty of furnishing the bond is on the vendee, for the vendors could perform their whole contract, *i. e.*, deliver the oil without reference to the Excise Law. As it was, however, they could not fulfil the terms of their contract without also following the requirements of the law, which then became a part of their contract.

The allegations of plaintiffs in error that no tender of money, and no demand for oil, had ever been made, and that there was no proof of breach of contract, cannot avail them in this case.

After contract proven by plaintiffs below, it was the duty of defendants below to prove their performance of it, or show good reasons why it was not performed. Had Robison, Hill & Co. sent this oil, it would have been an easy matter to have proven the fact. By the terms of this contract the oil was deliverable on board the cars free of charge at 35 cents per gallon, and $1.50 per barrel. Therefore a delivery, or offer of delivery, must take place before a tender of the price could be claimed, or insisted upon. There was no injustice done defendants below, on the amount of damages allowed, which were given as of the prices ruling from November 15th to 17th. It was proven that Robison said, on November 8th, they would deliver the oil in two or three days, when the funeral of his clerk's brother was over, and a reasonable time over and above that (three or four days) was properly given Tyson, in which, after learning by the non-delivery of the oil and otherwise of the breach of the contract, to come out from Philadelphia and make his purchase over again.

For the reason that there was a fixed time for the delivery of the oil, to wit, November 11th or 12th, no specific demand was necessary.

The opinion of the court was delivered by

STRONG, J.—The first and second points propounded to the court below by the plaintiffs in error, and which the court refused to affirm, may be considered together. They constituted, in effect,

[Robison *et al. v.* Tyson.]

a prayer that the case should be taken from the jury, and that peremptory instructions should be given that the plaintiff could not recover.   It is obvious that an affirmance of the points could not be justified by anything less than the fact that the declaration set out no cause of action, or that proof was totally wanting to sustain some one or more of its material averments.   It alleged a contract of the defendants to deliver to the plaintiff, on board the Pennsylvania Railroad Company's cars, within a reasonable time, one hundred barrels of oil, of a given description, for which the plaintiff agreed to pay a stipulated price.   It further averred a neglect and refusal of the defendants to deliver the oil within a reasonable time, and that the plaintiff had always been ready and willing to receive it, and pay for it as provided in the contract.   The uncontradicted evidence proves that on the 6th day of November 1862, such a contract was made between the parties ; that on the next day following, they met to arrange for the delivery and reception of the oil, and that it was then agreed the delivery should be made within two or three days, or as soon as the funeral of a person then deceased was over, and the defendants had time.   It was, however, never delivered, and this suit was brought on the 28th of November 1862.   That the declaration set out a sufficient cause of action is plain, unless it was defective in not averring a demand had been made for delivery. There was proof, however, of what dispensed with the necessity of a demand, namely, that the parties fixed a time for the delivery.   It may be, this should have been averred in the declaration, but the absence of such an averment is no sufficient reason for reversing the judgment.   An amendment would have been of course, had it been asked.   But it is objected there was no averment or proof of tender of the price.   It was not necessary. There was an allegation of readiness to receive the oil and pay for it, and no more is required in the pleadings in such a case. Thus it is ruled in Waterhouse *v.* Skinner, 2 Bos. & Pul. 447, that in an action for the non-delivery of goods, the plaintiff need only aver that he was ready and willing to receive and pay for them, and a refusal to deliver, without averring an actual tender. To the same effect is Rawson *v.* Johnson, 1 East 203, and the doctrine is repeated in Bronson *v.* Wyman, 4 Seld. 182.   Indeed, where, by the terms of the contract, the delivery and payment of the price are to be made, not at the vendor's place of business, but at some other place, there can be no actual tender, if the vendor refuses to deliver the goods.   And if a tender need not be averred, it need not be proved.

But though the court would not have been justified by any defect of the pleadings, in directing a verdict for the defendants, or, in other words, in affirming their first and second points, there was a radical failure in the evidence.   The averment con-

[Robison *et al. v.* Tyson.]

tained in the declaration, that the plaintiff was ready and willing to receive the oil, and pay for it on its delivery and shipment in the cars, was a material one, and was necessary to be proved. In Rawson *v.* Johnson, 1 East, already cited, the plaintiffs averred a readiness to accept and pay for the malt the defendants had engaged to deliver. This was held sufficient without stating a tender, but Lord Kenyon said that under the averment as made, " the plaintiffs must have proved they were prepared to tender and pay the money, if the defendant had been ready to receive it, and to deliver the goods." In Porter *v.* Rose, 12 Johns. 209, it is decided that the averment of a readiness to pay, like other material averments, must be proved on the trial. Topping *v.* Root, 5 Cowen 404, decides the same. So does Coonley *v.* Anderson, 1 Hill 522. And such is the universally recognised doctrine. It is not said there must be direct proof that the vendee was present at the time and place appointed for the delivery, with the money in hand with which to make payment, but there must be evidence from which a jury may legitimately infer that he was then and there ready. The reasonableness of the rule is well illustrated in the present case.

By the contract, the obligations of the parties were concurrent. The delivery of the oil and the payment of its price were to be at the same time. Where the plaintiff resided, we are not informed by the evidence, though it does appear that almost immediately after the contract was made, he left for Philadelphia. It does not appear that he was himself, or that he had any agent, at the cars at the time fixed for the delivery. But the instant the oil was in the cars at Pittsburgh, the defendants had a right to their money. They were not bound to wait till its arrival at Philadelphia, or whatever place might have been its point of destination. Until they received the price, they might retain possession. And the plaintiff's readiness to receive the oil, and to pay if he was ready, was a positive fact within his knowledge, and capable of being proved by him. To prove it, however, he made no attempt, and so far as any evidence exists in the cause, it rather tends to prove that he was not ready. He was not, therefore, entitled to recover, and the jury should have been so instructed in answer to the defendants' points.

We cannot forbear remarking that we do not approve of such a mode of presenting points to a court as was adopted in this case. The attention of the judge should have been directed specifically to the defect in the proof, instead of requiring him suddenly to pronounce upon the whole case, as if it had been a demurrer to the evidence.

We need hardly notice the refusal to affirm the defendants' third point, but as the case goes back for a new trial, we will say that we discover no error in that refusal. The plaintiff was

[Robison *et al. v.* Tyson.]

under no obligation to give the bond required from the owner by the Act of Congress.

Judgment reversed, and a *venire de novo* awarded.