# Milligan *versus* Dick.

1. On the breach by the vendor of a parol contract for the sale of real estate the vendee may recover in assumpsit so much of the purchase money as he has actually paid. It is no defence that under the statute of frauds the contract of sale cannot be specifically enforced.

2. Land was devised by a testator to two of his daughters, A. and B., of whom A. died, leaving a minor son, C., in the guardianship of his father D. The son was in delicate health, and in the event of his anticipated death another daughter of the testator would inherit one half of his share under the Intestate Laws. By an agreement between B. and D. proceedings in partition were instituted in which B. took one share at the valuation, and the other share was sold by a trustee for a full price to one who was acting in D.'s interest, and conveyed to him. B.'s settlement with the trustee was made by her receipt for one half the purchase money, which D. obtained from her on the faith of a parol promise to convey to her, which promise was not fulfilled. Afterwards C. died in his minority. B. brought assumpsit against D. to recover the difference between her half share of the land taken by her at the valuation and her half share of the purchase money of the other portion.

   *Held,* (1) That the transaction was not fraudulent as to the minor, as his right of election to take the land at his majority was not impaired.

   (2) That the agreement was not fraudulent as to the other surviving daughter of the testator, who would otherwise have inherited one half of the minor's share, as no interest was vested in her at the time of the sale.

   (3) That B. was entitled to recover from D. her share of the purchase money of the land conveyed to him.

   (4) That testimony as to the price for which B. subsequently sold the part taken by her at the appraisement was inadmissible to show the comparative value of the purparts.

October 7th, 1884.    Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *Westmoreland county:* Of October Term, 1884, No. 55.

Assumpsit by J. D. Milligan and Martha J., his wife, in her right and for her use against M. M. Dick.

On the trial, before HUNTER, P. J., the facts of the case appeared as follows: At the time of his death in 1862, Joseph Guffey was the owner of some 113 acres of land in Sewickley township, Westmoreland county. By his will he devised this land to his two daughters, Martha, the plaintiff, and Mary, who afterwards married M. M. Dick, the defen-

dant. Mary Dick died in 1869 or 1870 intestate, leaving her surviving her husband, the defendant, and two children, Joseph and Jeremiah. Joseph died soon after, an infant; and Jeremiah, who was sickly, survived about three years longer, during which time his father was his guardian. Joseph Guffey left also another daughter, Mrs. Rebecca Greenawalt, who was living when the transactions occurred which gave rise to the controversy in this case.

In the summer of 1871 Martha, who was then Mrs. Pinkerton and afterwards intermarried with J. D. Milligan, filed her petition in the Orphans' Court for partition of the premises. The sheriff's jury divided the land into two purparts, A. containing 57 acres 121 perches, appraised at $122.50 per acre; and B. containing 55 acres 133 perches, appraised at $115.41 per acre. A rule being entered on the heirs to appear and take or refuse the land at the valuation, the plaintiff, Martha, elected to take purpart B. at the appraised value and accordingly entered into recognizance to pay one half of the appraised value to Dick as the guardian of Jeremiah. The other purpart was not taken at the valuation and the court appointed Sheriff Kilgore as trustee to make sale of it. It was purchased by one Hamilton at $252 per acre, or $14,553 in all. The defendant paid the costs of the partition to the sheriff, amounting to $528.29, and gave him a receipt as guardian for one half the purchase money coming to his son, and also produced and delivered to the sheriff the plaintiff's receipts for the other half of the purchase money. At the same time he satisfied the plaintiff's recognizance for $3,221.71 given by her when she took purpart B. The sheriff executed and delivered to Hamilton a deed for the property, which he in turn shortly afterwards conveyed to Dick. Hamilton paid no money to the sheriff and was paid none by Dick for whom it was conceded he was acting.

In 1873 Jeremiah Dick died, an infant, unmarried and without issue. Mrs. Milligan then brought this suit to recover from Dick $7,012.35, the amount called for by the receipt she had given him to enable him to settle with the sheriff, less $3,221.71, the amount of her satisfied recognizance. The manner in which Mrs. Milligan's receipt was obtained and the purpose of its procurement were questions of fact in dispute. The substance of the testimony in behalf of the plaintiff was that Mr. Dick told her that his son would not live to enjoy the land; that he himself did not want it; that she ought to buy it in at the sale; that she could then convey the one half of part A. to her sister, Mrs. Greenawalt, and that the land would thus be kept in the line of the blood of Joseph Guffey, from whom it came. This accorded with the desire of the

[Milligan v. Dick.]

plaintiff, and she expressed her intention of attending the sale and bidding on the land. She was prevented from doing so by the defendant, who said he would save her that trouble and have the land bid in for her; that he had thought of several men to do the bidding, and had finally selected 'Squire Hamilton.

Afterwards the defendant told her that the land had been knocked down to Hamilton; that he would, at once, make the deed to her, and that to close up the record, etc., it was necessary for her to sign certain papers. Upon the faith that the land had been bought in for her, and would shortly be conveyed to her, she signed the receipt for $7,012.35. The defendant, upon one pretext or another, evaded her demands for a conveyance of the land until he refused to do so.

Mrs. Milligan, the plaintiff, was asked on cross-examination " whether she sold her share of the land and what she received for it, for the purpose of giving the full history of the transaction and her connection with it as part of the *res gestæ*." Objected to, and objection overruled. (First assignment of error.) The witness testified that about 1879, she sold it for $14,000.

The testimony of the defendant was to the effect that Mrs. Milligan so far from desiring to benefit Mrs. Greenawalt, was not friendly to her and desired the land sold " so that it would not revert" to her in case of Jeremiah's death. That she entered into an agreement with Dick by which the land was to be divided between them, and Dick was to pay her the difference in money between the valuations of the purparts and also make good to her by conveyance the difference in acres. That this arrangement was concluded by the payment of the costs, $528.29, by Dick, and by the conveyance of one acre of purpart " A." to Mrs. Milligan to equalize her acreage. The defendant further claimed that the contention of the plaintiff showed an agreement to defraud Mrs. Greenawalt of her " contingent remainder" to Jeremiah's share, and that, therefore, the plaintiff could not recover.

The defendant presented the following points:

2. The plaintiff, claiming that she signed the receipt for $7,012.35 as part of the consideration for the parol agreement of the defendant to convey her the land, such claim will not avail to destroy the effect of such receipt as against the defendant, unless such a contract was made with the defendant, about the said land so specified and definite in its terms that a chancellor could enforce it—if partly performed, or damages could be recovered for its breach.

Answer. This proposition would be correct if the parties, plaintiff and defendant, were strangers to the proceedings and

without any prior interest in the estate, and without explanation as to how the receipts came to be given. The parol promise standing alone would not be sufficient. (Second assignment of error.)

7. That according to the plaintiff's showing and claim, the defendant was the real purchaser of the land and A. C. Hamilton bid it in for him. This, if true, as contended by the plaintiff, leaves the land unconverted; the remainder, after death of defendant, going to Mrs. Greenawalt and the plaintiff as the heirs of Jeremiah Dick, deceased; they may recover the same after the death of the defendant as if it had not been sold. The plaintiff, therefore, has sustained no injury and cannot recover the money claimed out of the purchase money on the Kilgore sale, and the inheritance to the land also. Therefore the plaintiff cannot recover in this case.

8. The plaintiff, by her testimony, claiming to show that the defendant was the purchaser at the sale, and thus getting nothing else but his life estate in the land which he had before, and he having heretofore receipted the recognizance for $3,221 for his son's share in purpart " B," any promise by him to convey his estate, including his life estate, purpart "A," would be without any consideration, and being parol and vague in its terms would be void under the statute of frauds; and the plaintiff not having been damaged but really benefited by the receipt, which the defendant gave her, cannot recover any of the proceeds of the Kilgore sale in this case.

Answer to 7th and 8th points. We decline to instruct you positively, that by the plaintiff's showing the whole of the land is unconverted. If there was actual fraud, as we have said, in procuring the sale for the benefit of the parties here, the sale would be void as to all parties in interest, leaving the land remaining as it was. But we decline to say that even if Dick was the purchaser, the sale would be without effect. If the proceedings and sale were fair and honest, and Dick was the purchaser, while not competent to buy the interest of his ward in his own right, he might purchase any other interest in the land. But as to the share of the ward, he could only hold it in trust for him or his heirs in case of his death. But, taking the purchase as a whole, together with a simple parol promise to convey, could not bind the defendant, or make it effective as between the plaintiff and defendant, and entitle the plaintiff to recover on such grounds alone. (Third assignment of error.)

3d. If the plaintiff knew that defendant, being guardian of the estate of Jeremiah M. Dick, could not legally become the purchaser of purpart A., but she consented that he should get the title at such sale in disregard of his duty as guardian, thus

[Milligan *v.* Dick.]

converting the land into personalty, and agreed with him that after such purchase by him she would receipt for her share of the purchase money, and he would convey it absolutely to her, thus defeating the estate of Jeremiah M. Dick, his ward, in the land, and also the contingent remainder of Mrs. Greenawalt therein, she is *in pari delicto* with defendant as purchaser of the land, and cannot recover for defendant's failure to make title to her.

4th. That the defendant could not purchase the land at the sale by Kilgore and have the deed made to himself, so as to convey a good title to Mrs. Milligan; and if he did so, it would be a fraud on his ward, Jeremiah M. Dick, and if Mrs. Milligan agreed with defendant and wanted him to so purchase, and knew afterwards that Hamilton had bid it in for the defendant, and that afterwards Hamilton made the deed to him, and she wanted the deed from Dick in pursuance of this arrangement so that she could get the title herself, she is *in pari delicto* and cannot recover.

Answer to 3d and 4th points : These points raise the question of fraud in law and in fact, and in answer, we instruct you that if you believe the plaintiff and defendant entered into any arrangement for the purpose of directing the course of descent, and securing the land to her, to the wrong and prejudice of the heirs of Mary Dick, and Jeremiah Dick, of whom the defendant was guardian, she would be *in pari delicto*, or a party to the wrong, and could not recover upon the strength of any promise made by the defendant under the circumstances. Dick could not purchase at the sale to the prejudice of the interest of his ward. (Fourth assignment of error.)

Verdict and judgment for defendant. The plaintiff took this writ of error, assigning for error the admission of the plaintiff's testimony on cross-examination, and the answers of the court to the defendant's points as above noted.

*Moorhead* and *H. P. Laird* (with whom was *Head*), for the plaintiffs in error.—The evidence as to the price for which the plaintiff sold her land, eight years after the partition, was irrelevant : Hill *v.* Meyers, 7 Wright 170 ; Weidler *v.* Farmers' Bank, 11 S. & R. 134 ; Bratton *v.* Mitchell, 3 Barr 50 ; Cummings *v.* Williamsport, 3 Norris 472. Even if the contract is void under the Statute of Frauds the plaintiff can recover the money she advanced to aid the defendant in obtaining the title upon the faith of his agreement : Bender *v.* Bender, 1 Wright 419 ; Hastings *v.* Eckley, 8 Barr 197 ; Moore *v.* Small, 7 Harris 467 ; McNair *v.* Compton, 11 Casey 23. There was no fraud on the plaintiff's part. Any fraud in the

case arises out of Dick's relations to his ward, who held his mother's share of the land in fee subject to his father's curtesy. It is absurd to speak of Mrs. Greenawalt's "contingent remainder." As well might a son claim a "contingent remainder" in the land his father owns in fee, and endeavor to avoid his father's sale to a stranger. It was error to submit the question of fraud to the jury: Stouffer *v.* Latshaw, 2 Watts 167; Elkins *v.* McKean, 29 P. F. S. 493.

*Harry White* (with whom were *McAfee, Atkinson* and *Peoples*), for the defendant in error.—The contract alleged by the plaintiff is void under the Statute of Frauds: Woods *v.* Farmare, 10 Watts 195; Rowand *v.* Finney, 15 Norris 192; Meason *v.* Kaine, 13 P. F. S. 340. The agreement was a fraud on the defendant's minor son, whose title was to be divested as well as Mrs. Greenawalt's possible reversion, and the plaintiff cannot recover: Swan *v.* Scott, 11 S. & R. 164; Evans *v.* Dravo, 12 Harris 65; Ritter *v.* Lehigh Valley R. R., 7 W. N. C. 122.

Mr. Justice Trunkey delivered the opinion of the court, November 10th, 1884.

The validity and fairness of the proceedings in partition are unassailed. Mrs. Milligan took one purpart and bound herself, by recognizance, to pay one half of its valuation to M. M. Dick, guardian of Jeremiah Dick. Neither party electing to take the other purpart at its valuation, by order of court it was offered at public sale, and purchased by A. C. Hamilton for $14,353. The proceeding in partition was begun in August, 1871, and the sale was confirmed May 27th, 1872. Hamilton paid no money, but he received the deed from the trustee and then conveyed the land to M. M. Dick. Dick paid all the costs, $528.29, and gave to the trustee two receipts, each for $7,012.35, one signed by himself as guardian, and the other signed by Mrs. Milligan, which the trustee received in satisfaction of the purchase money. On the date of those receipts, Dick, as guardian, receipted for the amount of the recognizance given by Mrs. Milligan when she took the purpart. She was paid nothing for the difference between the sum owing on said recognizance and the sum due her out of said purchase money, but gave the receipt by the procurement of Dick.

On the face of the transaction Mrs. Milligan and Jeremiah Dick were entitled, share and share alike, in the valuation of one purpart and the purchase money of the other purpart. The guardian's receipts cover the half due his ward, but Mrs. Milligan's receipt embraces money still in the hands of the

defendant. He knew all the facts, and the evidence discloses neither a legal nor equitable defence against her claim for the balance of purchase money in his hands, on the ground that his ward, if living, or if dead, the ward's heirs may elect to take the land instead of the purchase money. He may show, if he can, a contract which defeats her right to recover, but the question of his right to purchase does not arise.

The defendant's second point is: "The plaintiff, claiming that she signed the receipt for $7,012.35 as part of the consideration for the parol agreement of defendant to convey her, the land, such claim will not avail to destroy the effect of such receipt as against the defendant, unless such a contract was made with the defendant about the said land so specific and definite in its terms that a chancellor could enforce it, if partly performed, or damages could be recovered for its breach." Answered thus: "This proposition would be correct if the parties plaintiff and defendant were strangers to the proceedings and without any prior interest in the estate, and without explanation as to how the receipts came to be given. The parol promise standing alone would not be sufficient."

Although the point was not directly affirmed, the jury could hardly have understood that it was denied. The proposition and answer, alike difficult to comprehend, we think were well calculated to mislead the jury. The receipt was the equivalent of so much money paid by the plaintiff to the defendant. If she paid it on a definite or indefinite contract for the sale of land, what rule enables him to keep both land and money? If the contract was not so specific in its terms that a chancellor could enforce it, will the law protect him in withholding reimbursement of the money paid him on the faith of the contract? No principle is better settled than that the buyer can recover from the seller, for breach of a parol contract to sell and convey land, so much of the purchase money as was actually paid. It is no defence, that the terms of the contract were not specific and definite. Yet it is probable that the jury understood that such a parol promise to convey, as mentioned in the point, would not be sufficient to entitle the purchaser to recover back the money paid, on refusal of performance by the seller. The point ought to have been plainly refused, and the second assignment must be sustained.

It was lawful for the parties to procure the partition, and also the sale of the land not taken by either at the valuation. They could rightfully obtain by legal process a public sale. There is no evidence that Mrs. Milligan conspired to procure a false valuation, or to prevent sale for the highest price that could be obtained; but there is some testimony that Dick sought to prevent bidding. A fair sale was no fraud upon

the minor, and while the minor was living, his aunt, Mrs. Greenawalt, had no power to object to a sale of the land, though she expected to survive him.  How was a " contingent remainder " vested in Mrs. Greenawalt?  What wrong was done to the minor by partition and sale of the land in the mode provided by law?  Were his guardian to purchase fairly and at the highest price, it would be no crime, even if the ward at majority could elect to take the land.  Nothing appears in the case to warrant the instruction given in answer to the defendant's third and fourth points, namely, if the "plaintiff and defendant entered into any arrangement for the purpose of diverting the course of descent and securing the land to her, to the wrong and prejudice of the heirs of Mary Dick and Jeremiah Dick, of whom defendant was guardian, she would be *in pari delicto*, or a party to the wrong, and could not recover upon the strength of any promise made by the defendant."

The defendant's seventh and eighth points ought to have been refused.  He purchased at judicial sale, by the agency of Hamilton, and the real question is, whether the plaintiff has been paid her share of the purchase money.  The trustee who made the sale was entitled to receive the amount of the bid; instead, he took the receipts of the parties who would receive the money in the distribution.  The defendant had the benefit of the entire share of the plaintiff in making payment to the trustee; the validity of his title is not involved in this action.  When the sale was confirmed, and the deed executed by the trustee, the title was vested in the purchaser, as respects the plaintiff.  It is foreign to this issue to inquire whether the ward could, if he would, defeat the defendant's title to any part of the land.  The defendant has refused to convey to the plaintiff, and although the parol contract was vague in its terms and void under the Statute of Frauds, if there be no other defence, she can recover all the money paid him on account of the contract.

The only remaining assignment is the first, and that also must be sustained.  In any view of the case, evidence that a number of years after the partition, the plaintiff had sold her land, and what was the price, was irrelevant; and it was impertinent in cross-examination, as it would have been in chief. It cast no light on the transactions involved in the issue.

Judgment reversed, and venire facias de novo awarded.