## Durham *v.* Wick, Appellant.

*Vendor and vendee—Purchase money—Parol contract.*

A buyer can recover from the seller for breach of a parol contract to sell
and convey land so much of the purchase money as was actually paid.

*Vendor and vendee—Purchase money—Parol contract—Bankruptcy.*

The refusal by a vendor in a parol contract for the sale of land to execute
and deliver a deed, excuses the vendee from the necessity of tendering pay-
ment in order to recover the money paid.

In an action by a trustee in bankruptcy to recover money paid by the
bankrupt on account of a parol contract for the purchase of land, the plain-
tiff is entitled to recover where it appears that the defendant had refused
to make a deed for the land to the trustee, and that after the suit was
brought, but before the trial he had leased the land to another party.

Argued Oct. 19, 1904.   Appeal, No. 171, Oct. T., 1904, by
defendant, from judgment of C. P. Butler Co., Sept. T., 1903,

No. 12, on verdict for plaintiff in case of E. A. Durham, Trustee in Bankruptcy of Estate of Amos Steelsmith v. L. C. Wick. Before MITCHELL, C. J., DEAN, FELL, BROWN, MESTREZAT, POTTER and THOMPSON, JJ.    Affirmed.

Assumpsit for money had and received.    Before GALBREATH, P. J.

The opinion of the Supreme Court states the case.

Verdict and judgment for plaintiff for $2,690.93.    Defendant appealed.

*Errors assigned* were various instructions and particularly the refusal of binding instructions for defendant.

*J. D. Marshall*, with him *W. Z. Murrin*, for appellant.—The plaintiff must offer the balance of the purchase price, before he can maintain his action to recover the part of the purchase money paid.   He has no standing in court until he has made a tender of the balance of the purchase money: Allison v. Montgomery, 107 Pa. 455; McGrew v. Foster, 113 Pa. 642; Power v. North, 15 S. & R. 12; 2 Parsons on Contracts, 5th ed., 679; Irvin v. Bleakley, 67 Pa. 24; Bell v. Clark, 17 W. N. C. 44.

Where a person has paid money upon a parol contract for the purchase of lands which is void or voidable by the statute of frauds, he cannot maintain an action to recover back the money so paid, so long as the other party to whom the money has been paid is willing on his part to perform the contract: Collier v. Coates, 17 Barbour (N. Y.), 471; Dowdle v. Camp, 12 Johnson (N. Y.), 451; Abbott v. Draper, 4 Denio (N. Y.), 51; Coughlin v. Knowles, 48 Mass. 57; Shaw v. Shaw, 6 Vermont, 69; Duncan v. Baird & Co., 8 Dana (Ky.), 101; Richards v. Allen, 17 Maine, 296; Lane v. Shackford, 5 N. H. 130.

*T. C. Campbell*, with him *W. D. Brandon*, for appellee.—Under the authorities it is not necessary that Durham, as trustee, should make a formal tender of the purchase money and demand a deed; it is only necessary that the plaintiff should show Wick's inability or unwillingness to carry out his contract by making the deed: Allison v. Montgomery, 107 Pa. 455; Gillet v. Maynard, 5 Johnson (N. Y.), 85; Coughlin v.

Knowles, 48 Mass. 57; Cobb v. Hall, 29 Vt. 510; Galway v. Shields, 66 Mo. 313; Day v. Wilson, 83 Ind. 463.

OPINION BY MR JUSTICE POTTER, December 31, 1904:

The appellant, L. C. Wick, prior to 1899, was the owner of a planing mill property in Butler, Pennsylvania. On or about January 10, 1899, he entered into a parol contract with Amos Steelsmith to convey to the latter a one-half interest in this property for $4,500. In pursuance of this contract Steelsmith gave Wick three promissory notes, payable in six, twelve and eighteen months, for $1,500 each. Wick retained possession of the entire property. Subsequently Steelmith paid one of the notes in full, and $500 on account of another, in all $2,000.

On March 25, 1901, Steelsmith filed a petition in bankruptcy in West Virginia, where he resided, was adjudicated a voluntary bankrupt, and E. A. Durham was appointed trustee of his estate. This suit was brought by Durham, as such trustee, to recover from Wick, the $2,000, paid by Steelsmith on account of the notes, with interest. In defense, Wick averred that he had always been willing to execute and deliver to Steelsmith, or to anyone designated by him, upon payment of the balance of the purchase money, a proper and legal deed for an undivided one-half interest in the mill property, and had so notified the plaintiff. He further claimed that the failure of Steelsmith or his trustee, to tender at any time the unpaid balance of the purchase money, would prevent the recovery by either of them of the amount actually paid. After the appointment of the trustee in bankruptcy, there was some correspondence between his attorneys, Merrick & Smith of Parkersburg, West Virginia, and Wick. On November 4, 1902, they wrote him a letter in which they referred to a previous letter, containing a suggestion that he should buy Steelsmith's interest in the property and in the meantime pay a reasonable rent for the use of the one-half interest, and requested an answer. On November 6, 1904, J. D. Marshall, an attorney of Butler, wrote to Merrick & Smith, saying that Wick had handed him their letter of the 4th inst., that Steelsmith had no interest in Wick's property; that there was a verbal agreement by which Wick agreed to

convey to Steelsmith an undivided one-half interest upon payment of a certain sum, of which only a small part had been paid; that upon payment in full of the purchase money and interest, Wick would keep his word with Steelsmith and convey to him the property, but to no one else; and that Wick would not accept any pro rata of the purchase money, nor convey to any other person than Steelsmith, as the latter had no interest that could be conveyed or taken for debt.

It appears from the evidence that on March 25, 1904, after suit brought and before the trial, which began April 21, 1904, the defendant leased the property in question to the Iceless Refrigerator Company for the term of one year.

Upon the trial the court declined to give binding instructions for the defendant and instructed the jury (1) that if they believed that the letter from Marshall to Merrick & Smith, dated November 6, 1902, was authorized by Wick, it was a refusal by Wick to recognize the interest of the plaintiff in the property or to make a deed to him, and entitled the plaintiff to recover from Wick the purchase money paid by Steelsmith; and (2) that if they found that, under the parol contract, the title of the property was to be in fee simple, free of all incumbrances, the lease to the Iceless Refrigerator Company was inconsistent with the tender of the deed by defendant, and placed defendant in a position where he could not carry out his contract. The jury found for the plaintiff for the full amount of his claim with interest.

The first and controlling question to be determined, is whether or not the letter of November 6, 1902, written in behalf of Wick, was such a refusal to carry out the terms of the contract of sale on the part of the vendor, as would enable the vendee, or his trustee, to rescind, and sue for the purchase money paid on account. Of course, if the vendor had in no way repudiated the contract, the vendee would be obliged to tender the entire amount of the purchase money, before he would be entitled to disaffirm, and sue for the amount already paid on account. But, on the other hand, the refusal of the vendor to perform his part of the contract, would discharge the vendee from further responsibility and entitle him to claim at once repayment of the part of the purchase money previously paid. In Milligan v. Dick, 107 Pa. 259, Justice

TRUNKEY said (p. 265 ): "No principle is better settled than that the buyer can recover from the seller, for breach of a parol contract to sell and convey land, so much of the purchase money as was actually paid. "

Was there then a breach in this case upon the part of the vendor? Turning to his letter of November 6, 1902, we find that Wick, through his attorney, declared explicitly that Steelsmith had no interest whatever in the property. And while admitting the verbal agreement for the sale to him of a half interest, stated that he would only convey to Steelsmith personally and to no one else ; and refused to make a deed to any other person. The trustee could only have understood this letter as a flat and specific refusal to convey the interest in the property to him, and he was we think justified in regarding it as a breach of the contract, by the vendor, and a relinquishment of his right to further performance by the vendee. The intention upon the part of Wick to ignore the contract, in so far as making under it a deed to the plaintiff is concerned, could hardly have been more plainly stated. The letter expressed a determination to prevent the trustee, and through him the creditors, from obtaining any interest in the property, upon the theory that the contract, not being in writing, could not be enforced in law. Refusal to convey to the trustee under such circumstances was a repudiation of the agreement to convey to Steelsmith for "stated broadly, the rule is that the trustee takes all the property of the bankrupt, whether in possession or in action, at the time the petition was filed : " Collier on Bankruptcy, 4th ed., 509. Having refused to convey to the trustee, the defendant ought not to complain that he was taken at his word. By his action, he relieved the plaintiff of the necessity of tendering the full amount of the purchase money. The present action is in disaffirmance of the contract, by reason of the failure of the vendor to perform. As was said by this court in Bell v. Kennedy, 100 Pa. 215, 221 : " If this action were in affirmance of the contract, it would be necessary to show a readiness or willingness on the part of the vendee to perform, but it is in disaffirmance thereof by reason of the inability and failure of the vendor to perform. His performance was a condition precedent to his right to require any payment from the vendee.

The latter therefore had the right to recover the money which he paid under a misapprehension, and which the vendor was not entitled to receive: Moore v. Shelly, 2 Watts, 256; Robison v. Tyson, 46 Pa. 286; Crossgrove v. Himmelrich, 54 Pa. 203."

In the last cited case, Justice THOMPSON said (p. 209): "The defendants contend that there was not (a proper case for rescission shown) because the plaintiffs did not tender at the time they claimed to rescind the contract, an entire performance on their part. An offer of a readiness or willingness to pay for the hay would have been material if the action had been in affirmance of the contract: Robison v. Tyson, 46 Pa. 286. But this is an action in disaffirmance of the contract, to recover back the price paid. A tender or offer of the money which would be due on the completion of the contract, was not essential, when it appeared otherwise that the plaintiff had fully complied with his part of the contract up to the time of electing to rescind it . . . . Here was a failure to complete the contract by the defendants, and under these circumstances the plaintiffs were entitled to rescind and to recover so much money as they had advanced on the contract beyond the hay received."

So in Forsyth v. North American Oil Co., 53 Pa. 168 (174), it was held that a refusal by the vendors, in a contract of sale, to deliver the goods agreed to be sold excused the vendees from the necessity of tendering payment, in order to recover the money paid.

In the present case, our conclusion is that the vendor was in default, by reason of his refusal to convey to the trustee, and that this default rendered unnecessary a tender of the full amount of the purchase money by the vendee, before rescinding the contract. Then again the conduct of the vendor in leasing the property to a third party, prior to the trial, was evidence not only of his unwillingness but of his inability to carry out at that time the original contract. The lease constituted an incumbrance upon the title: Cross v. Noble, 67 Pa. 74; Wilson's Appeal, 109 Pa. 606.

We find nothing in the specifications of error which would justify us in sustaining any of them. They are all overruled, and the judgment is affirmed.