# Weyand *versus* Weller.

*Decree for Specific Performance.—Power of Court to rescind.*

1. A decree for the specific performance of the contract of a decedent, made in the Orphans' Court, cannot be rescinded on a petition or bill in equity, filed by a stranger, more than six years afterwards, even though it had never been carried into execution. A bill of review is the only proper method to obtain the rescission of such a decree.

2. While the Orphans' Court has jurisdiction to decree the execution of the contracts of decedents, yet its jurisdiction is limited, and it has no authority to entertain a petition or bill in equity, for the rescission of a decree for specific performance, filed by one who had afterwards become the purchaser at sheriff's sale of the interest of the grantee in the contract for the exchange of lands, the decree for which was sought to be rescinded.

APPEAL from the Orphans' Court of *Somerset county.*

This was an appeal by Daniel Weyand from the decree of the Orphans' Court in certain proceedings had therein, in relation to the rescission of a decree for the specific performance of a contract for the exchange of real estate between John Hay and Michael Hay, deceased.

The history of this case, and all the material facts connected with it, are fully and clearly set forth in the opinion of this court, which was delivered, July 24th 1861, by

[Weyand *v.* Weller.]

THOMPSON, J.—This is a novel case throughout; it is a case in equity in the Orphans' Court. It appears by the plaintiff's bill or petition, that he seeks to rescind a decree of the Orphans' Court, made more than six years before his application.

It seems that about the year 1840, John Hay, and Michael Hay his father, made an exchange of lands; the former was to pay the latter certain boot-money; possession interchangeably delivered, and the money paid. Some time after this, Michael Hay died, and, in process of time, his executors sold and conveyed a part of Michael's estate, including the land received in exchange from John. In 1847, John petitioned the Orphans' Court to decree a conveyance by the executors of Michael, to him of the land he had received possession of. The heirs and executors of Michael came into court, and confessed the petition, and the right of the applicant to specific performance, and a decree in conformity with the petition was granted, on the terms of a conveyance by John to the heirs of his father for the land he had exchanged. It seems the decree has never been complied with. Afterwards, in 1849, Daniel Weyand became the purchaser at sheriff's sale of John's tract, on a judgment against John, received a deed, and has held it ever since. In 1850 there was an order of sale by the Orphans' Court for this same land as belonging to Michael's estate, and Weller, the appellee, became the purchaser, and received a deed for it as such. On this title he brought an ejectment against Weyand, to recover as on a rescission of the contract between Michael and John Hay, on the ground that John had not made a conveyance with his wife of the Flick farm, which he had exchanged with his father for the Fulling mill tract. The interest of the wife in the Flick tract appears to have been one-sixth; descended from her father, and a further interest, a contingent right of dower, if she survived her husband. For this want of a conveyance, Weller sought to treat the exchange as rescinded. In this he was defeated, as appears in the case of Weller *v.* Weyand, 2 Grant's Cases 103. It was there held that after the sale of the Flick farm by the executors, and a judicial sale of John's tract to Weyand, rescission was out of the question, for the reason that John could not be placed in *statu quo*. What he had given in exchange had been sold by the executors, and, as Lewis, J., said in that case, "the consideration received and the legal estate to be conveyed had been separated." The court therefore distinctly held that the plaintiff had no right to recover the land, and no equity to rescind the original contract; but for any defect resulting in damage to Michael, or any party through him entitled to move in the matter, that might be compensated in damages to the extent of whatever could not be executed in accordance with the decree for specific performance.

[Weyand v. Weller.]

After this decision Weller instituted the proceedings now before us, purporting to be a bill for the rescission of the decree obtained on the petition at the instance and for the benefit of John Hay. Passing by for the present other considerations, themselves sufficient for the determination of this case, I am at a loss to comprehend this bill as a remedy. In the first place, the rescission of that decree would not rescind the contract of exchange. That could not be done without restitution to John, and we have seen that that could not be made. And in the second place, it was not a bill of review, even supposing it in time, which it was not, for it specifies no error in the former decree. It simply calls for a rescission of it because not executed. It is an original bill in equity between parties who are neither orphans nor in any manner entitled to invoke the action of the Orphans' Court. It seems to have been forgotten that the Orphans' Court is a court of limited jurisdiction. Its jurisdiction is well defined; and while it has unquestionable jurisdiction to decree the execution of contracts of decedents, yet it would be difficult to find its authority to entertain bills by strangers to such decrees to rescind its orders for specific execution. We think the court had no jurisdiction of the bill or petition.

It is true the counsel for the complainant, some three or four years after the bill and answer were in, and the testimony taken, prayed the court for a decree to *compensate him* for the failure of John Hay to procure a conveyance by his wife of the alleged one-sixth interest in the Flick farm, which her husband had exchanged for the Fulling mill farm. Accordingly, the court did decree that Daniel Weyand pay to John Weller $140 for the one-sixth, and the further sum of $40 a year to be paid to him during the life of the wife of Hay, if she survived her husband. Saying nothing about the entire irrelevancy between the prayer of the bill and the decree, and the absence of anything contained in it to justify such relief, we are unable to discover any liability of Weyand to Weller to make compensation, as claimed in the prayer of the complainant's counsel. The decree of 1847 did not require John Hay to procure his wife's release. This the case of Weller v. Weyand decides. Supposing, however, it be true that the Orphans' Court sale to Weller did invest him with the legal title of Michael Hay, how could he invoke a decree in equity to compel Weyand to convey to him, or pay him for John Hay's failure to procure his wife's release of land, to which he (Weller) had no title, which never belonged to him, and with which he never had any connection? There was no covenant on which equity could operate, and not even the semblance of a promise by Weyand to do anything of the sort claimed. He simply bought John's title, and will stand upon it, unless some better title makes its appearance and takes it from him. Weller was

[Weyand *v.* Weller.]

no more entitled to compensation in the direction attempted than any other good citizen of Somerset county.

If Weyand had by some process, in virtue of some contract, been pressing Weller for a conveyance of the legal title obtained at the Orphans' Court sale, it is quite possible a court of equity would have withheld its aid until the conveyance by Mrs. Hay was either made or compensation made to some proper party. But that is not the attitude of this case. It is not alleged in the petition that either John Hay or Daniel Weyand was ever under obligation to procure this conveyance or compensate its absence. But it rather seems that this was deemed of no consequence. The court, however, were doubtless led away by some remarks of the learned judge who delivered the opinion in Weller *v.* Weyand, *supra*. It was there said, " If the parties in interest should renew proceedings in the Orphans' Court, and could satisfy the judge that the wife's interest in the Flick farm was to be conveyed to Michael Hay, it will be in the power of the court to inquire into the nature and extent of that interest, and into all the equities affecting the case." What parties renew the proceedings? Certainly the parties to the bargain, or at least an assignee of it. As already said, if there was an application on behalf of John Hay for a title, or to enforce the decree, it might be resisted on the ground claimed here, and he might be obliged to submit to the terms of paying for procuring the release in question, and perhaps so might Weyand be bound to do the same thing if he were asking a decree. But they are not moving in the premises, and perhaps never will. A misunderstanding of the suggestion referred to has doubtless led to the exhibition of this extraordinary proceeding. It is all wrong, and must be reversed.

> Now, to wit, July 24th 1861, the decree of the Orphans' Court is reversed at the costs of the appellee, and his petition dismissed at his costs.