## Nimlet's Estate.

Argued January 20, 1930.   Before Moschzisker, C. J.,
Frazer, Walling, Simpson, Sadler and Schaffer, JJ.

*Owen J. Roberts,* with him *Thomas Kilby Smith, White & Wetherill* and *Lucien B. Carpenter,* for appellant.—Free and clear of all encumbrances entitled the claimant to unencumbered property, whether it be realty or personalty: Ford v. Hedley, 62 Pa. Superior Ct. 380; Graybill v. Ruhl, 225 Pa. 417; Durham v. Wick, 210 Pa. 128; Ritter v. Hill, 282 Pa. 115.

*James R. Wilson,* with him *James F. Hagen* and *William H. Peace,* for appellees.

OPINION BY MR. JUSTICE SIMPSON, March 17, 1930:

At the audit of the executors' account in the estate of Mary A. Nimlet, deceased, appellant presented a claim for $7,000 with interest. The auditing judge allowed it; but, on the hearing of exceptions filed by appellees, who are the distributees named in her will, the claim was rejected by the court in banc, the auditing judge dissenting; from the resulting decree of distribution this appeal was taken. The majority opinion seems to rely upon a number of facts alleged to appear in a document which was not offered in evidence, and, if it had been, could not properly have been admitted. In our statement of the relevant facts, now about to be made, we shall limit ourselves to those which are undisputed. No others affect the question on which we rule the case.

Appellant and the Second National Bank held the legal title to about 96 acres of land, in trust for the heirs of Ann Whitaker, deceased, among whom were decedent and appellant. The deed of trust, which was signed by all the parties beneficially interested, gave the

trustees the right, within five years, to sell the property "at such price or prices as they may deem best"; to grant and convey it in fee simple "free and clear of any trust and without liability on the part of such purchaser or purchasers to see to the application of the purchase moneys"; and to distribute the net proceeds to and among the various parties in interest in certain specified proportions, decedent's being $7\%_{261}$ thereof. The deed further provided that if the trustees could not agree as to the wisdom of accepting an offer for the property, "reference of the same shall be made to all parties in interest and all such questions [shall] be determined by a vote of [those having] a majority in interest." Of course, on settlement of the trustees' account, there would have to be deducted from the net sum realized by any such sale, the trustees' commissions and expenses, before distribution was made to the beneficiaries.

Within the five years, an agent for William D. Blackburn offered to buy the land for $9,500 an acre, less a broker's commission of five per centum of the purchase price. The trustees disagreed regarding the offer, the bank saying it should be accepted and appellant that it should not. The dispute was thereupon referred to the parties beneficially interested, as provided by the terms of the trust. Decedent and her sister-in-law, who together owned a majority interest under the trust, were about to assent to the sale to Blackburn, when appellant handed to their attorney in fact a letter in which he offered them, if given "forty-eight hours . . . . . . to consummate the deal," the sum of "$9,500 on the same terms and conditions as set out in the [proposed] agreement of sale" with Blackburn, but without liability for a broker's commission. This was accepted in writing by the two ladies. Within the time specified, appellant obtained a purchaser at $10,000 an acre, less the five per cent broker's commission. This offer was accepted, the

property was sold and conveyed in accordance with it, and the trustees received the specified purchase price.

Nothing was done by either party under the letter and acceptance above referred to, but, after the new purchaser was obtained, appellant's attorney drew and the parties signed a formal contract of sale by decedent to appellant. By it she agrees to sell and he to buy "all her $7\%_{261}$ interest" in the ninety-six acres "at the rate of $9,500 per acre without commission, [payable] as follows: $6,705 thereof in cash upon the signing of this agreement which deposit shall be forfeited to [decedent] as liquidated damages in case of default by [appellant] in the performance of the terms of this agreement, and the balance of the said purchase money as follows: Eighty per cent thereof to be secured by a valid first mortgage, payable at any time within three years with interest thereon semiannually at the rate of six per cent per annum and the balance of the said purchase money to be paid in cash at the time of settlement. The premises are to be conveyed free and clear of all encumbrances and easements which affect the marketability of the title. The beds of all streets plotted and appearing upon the said plan are included in the premises. The party of the second part agrees to take subject to all plotted streets, sewers or municipal plottings for park purposes, $7\%_{261}$ of any existing encumbrance or encumbrances on the said premises at time fixed for settlement to be paid out of the purchase money. Possession is to be given at the time of settlement, except four small tenement houses on the premises, and possession of such tenement houses to be given by assignment of interest in existing leases, $7\%_{261}$ of taxes, water rent, interest on encumbrance, if any, to be apportioned for this current term. Title is to be such as will be insured by any reputable Title Insurance Company of the City of Philadelphia at current rates. The said parties hereby bind themselves, their heirs, executors and administrators for the faithful performance of the above agree-

ment within four months from the date of this agreement. The said time herein mentioned to be of the essence of this agreement unless extended by mutual consent in writing endorsed hereon. [Decedent] agrees that [appellant] shall not be in any way held liable, as trustee, to her by reason of the sale of this interest in said property at a higher figure." Considering what decedent had to convey, the agreement of sale just recited was, to say the least, very clumsily drawn, well calculated to invite litigation, and because of its crudity the present controversy arises. It was, in form, a sale of an interest in the realty as realty, whereas decedent's only interest was in the proceeds thereof, if and when sold.

When the agreement was signed, $7,000 hand money was paid by appellant to decedent, instead of the required $6,705, and appellant's claim is to recover back the former amount. It will be noticed that under appellees' contention in regard to the agreement, it could only result in a case of "heads I win and tails you lose" in favor of decedent and against appellant. Under their construction of it, if appellant failed to carry it out, he forfeited the $7,000 hand money paid by him; if he carried it out, he lifted from decedent's shoulders and placed upon his own, $7\%_{261}$ of the total commissions and expenses allowed on the settlement of the trustees' account, amounting, as calculated by appellees, to $7,303.56; in either event without any benefit whatever accruing to him.

At the time fixed for settlement, both parties appeared. Decedent tendered to appellant, to be executed by him, a deed so ingeniously drawn as to pass her interest, whether it was land or only the proceeds to be realized from the sale of land. She tendered, also, a title insurance policy limited to the insurance of decedent's title to $7\%_{261}$ of the proceeds of the sale of the property, but expressly stated to be subject to, and not free and clear of the proportionate part of the trustees'

commissions and expenses. Appellant refused to proceed with the settlement on these terms, whereupon decedent declared the $7,000 hand money forfeited, and thus the proposed sale by decedent to appellant fell through, neither party thereafter making any attempt to have it carried out.

It is obvious that decedent could make no valid conveyance except of an interest in the proceeds of the land when sold; but it is equally obvious that appellant was not obliged to accept that which was tendered, unless it was a full compliance with the terms of the agreement,—admittedly nothing having been added to or omitted from it by fraud, accident, mistake or otherwise.

We have often decided that "every agreement should be interpreted with reference to the circumstances under which the parties contract, and in the light of the objects to be accomplished": McKeesport Machine Co. v. Ben Franklin Ins. Co., 173 Pa. 53; Myers's Est., 238 Pa. 195, 211; Ruth-Hastings Glass Tube Co. v. Slattery, 266 Pa. 288, 291; Van Horn v. Kemena, 281 Pa. 579. "An agreement is the assent of two minds to the same thing. It should be construed in the light of the existing facts and circumstances under which the parties entered into it. It should be so interpreted as to effect the objects in respect to which the parties proposed to contract": Richardson v. Clements, 89 Pa. 503, 505; McMillin v. Titus, 222 Pa. 500, 503. "The circumstances surrounding the parties when the contract was made, and affecting the subject to which it relates, form a sort of context that may properly be resorted to in doubtful cases to aid in arriving at the meaning of the contract": Bole v. New Hampshire F. Ins. Co., 159 Pa. 53, 56; Harris Chemical Co. v. Tunnell & Co., 261 Pa. 72, 79.

Considered in the light of the foregoing authorities, it is clear that when decedent contracted, as specified in the beginning of the agreement, "to sell and convey to [appellant] who agrees to purchase all her $7\%_{261}$ in-

terest" in the 96 acres of land, both parties must have understood that what was to pass was her interest in the proceeds of the land when sold, and not an interest in the land as land. This was all she had to sell, as appellant knew; all the negotiations recognized that situation; and hence the agreement must be so construed as to require her to convey only her right to a proportionate part of the proceeds of the land, when they became due and payable.

By reaching this conclusion we do not, however, eliminate from the agreement such of its expressed provisions as can be made applicable to the resulting situation, but must, in equity and good conscience, apply to it the language seemingly intended for a sale of land as land, in so far as it is possible so to do. One of the provisions of the agreement, as already quoted, is that "the premises are to be conveyed free and clear of all encumbrances and easements which affect the marketability of the title." It is easy to apply the first part of this clause to the agreement as we have construed it. "The premises to be conveyed," as, at appellees' suggestion, we have said they must be, are the $\frac{7}{261}$ interest in the proceeds of any sale of the land, and hence the clause must be interpreted to mean that the $\frac{7}{261}$ of the proceeds of any such sale "are to be conveyed [to appellant] free and clear of all encumbrances." So far as concerns real estate, "an encumbrance is every right to or interest in the land which may subsist in third persons, to the diminution of the value of the land, but consistent with the passing of the fee by the conveyance": Batley v. Foerderer, 162 Pa. 460; Howell v. Northampton R. R. Co., 211 Pa. 284. Under the circumstances here appearing, it cannot be less than this, so far as concerns decedent's interest in the proceeds of the realty. Consequently, when decedent agreed to convey her interest "free and clear of all encumbrances," she must be treated as meaning that she will convey it free of everything which will diminish its value, but not prevent her from

conveying it. This would necessarily include the trustees' commissions and expenses, the existence of which did not prevent her from assigning her interest, but did diminish its value.

We have not lost sight of the fact that the words we are considering are not apt ones to express an intent to convey the proceeds of realty only; but neither are the preceding words, designating the estate to be conveyed, apt words for such a purpose. The same thing is true, also, of many other parts of this ill-drawn contract. If we are to exclude all the words which do not aptly apply to a conveyance of the proceeds of the sale of land, then we must exclude those which relate to what decedent agrees to sell and appellant to buy, and the agreement would wholly fail for want of a subject-matter to which its many clauses could be applied. Nor have we overlooked the use of the word "easements," in the sentence now being considered. It, of course, can have no relation to the proceeds of realty; but the fact that it has become a useless word, furnishes no reason why it should drag down with it other words, duly expressed, which were intended to and can and should be made useful. True, we might so interpret the agreement as to make some of its provisions relate to the sale of an interest in the realty, and others to the realty itself; but this would be making a new contract, not interpreting one already existing, and would be a wholly arbitrary manner of dealing with the subject-matter without anything whatever to support it. What decedent was to convey, whether it was an interest in land or only in the proceeds of land, was to be a title "free and clear of all encumbrances"; what she tendered was a title subject to encumbrances, and hence was not a compliance with her agreement.

It follows that decedent had no right to forfeit appellant's hand money, and it must be returned to him by her estate. The other questions argued become of no moment in view of this conclusion; but we should add,

perhaps, that it is a matter of indifference whether or not appellant was ready and willing, at the time of the settlement, to comply with his part of the agreement. As decedent would not give to him the unencumbered interest she had contracted to deliver, she had no right to retain the amount paid by him, even though he knew of the encumbrance at the time he signed the agreement, and whether or not he would himself have complied therewith if she had been willing to do so: Durham v. Wick, 210 Pa. 128; Myers v. Fidelity-Phila. Trust Co., 290 Pa. 283.

We the less regret the conclusion reached, since we are strongly impressed with the equity of appellant's claim, which, it must be kept in mind, was before the orphans' court, a court that, within the scope of its jurisdiction, has all the powers of a court of equity (Dundas's App., 64 Pa. 325; Carney v. Merchants' Union Trust Co., 252 Pa. 381), and appeals from it are to be heard and determined by us "according to the justice and equity thereof": Section 2, Act of June 16, 1836, P. L. 682, 683; Shelley's Est., 288 Pa. 11. Decedent was willing to have the trustees sell to Blackburn the 96 acres, in the proceeds of which sale she had a $\frac{79}{261}$ interest, for $866,400 ($9,500 per acre less a five per cent broker's commission); it was sold, by reason of appellant's industry, for $912,000 ($10,000 per acre less the broker's commission), and she now seeks to compel him to lose $7,000, because his attorney carelessly drew or had drawn an agreement which could not possibly be enforced if its words were given the usual meaning attributable thereto, and which nowhere expresses the idea that she was to get, by virtue of it, more than she was entitled to under the letter and acceptance, and relatively more than any other party beneficially interested. True, appellant, as trustee, was in duty bound to get the best possible price for the property, but this furnishes no reason why he should be punished for doing it.

The decree of the court below is reversed at the cost of appellees, and the record is remitted that distribution may be made in accordance with the adjudication filed by the auditing judge.