## Lamparter's Estate.

*John A. Coyle* and *Zimmerman, Myers & Kready,* for lien creditors.

*Guy K. Bard* and *Amos E. Burkholder,* for exceptions.

*John E. Malone,* for accountant.

APPEL, J., Oct. 30, 1930.—J. George Lamparter died intestate Nov. 24, 1926, leaving to survive him a widow, Christine Lamparter, seven children and a grandchild as his heirs.

On Jan. 6, 1926, decedent, being then the owner thereof, conveyed to his daughter, Elizabeth D. Lamparter, two two-story brick dwelling houses in the City of Lancaster, with the ground thereto belonging, Nos. 723 and 725 East Orange Street. On the same day he conveyed to his son, George C. Lamparter, two dwelling houses in the City of Lancaster, with the ground thereto belonging, Nos. 229 and 231 Howard Avenue, and also a property on Locust Street in said city. Although at the time these conveyances were made the decedent was married, his wife did not join in either of the deeds.

It appeared at the death of the decedent that his estate was not sufficient to pay his debts. It being alleged that at the time the above conveyances were executed decedent was insolvent, two creditors, the Conestoga National Bank of Lancaster, Pa., and the Agricultural Trust and Savings Company of Lancaster, Pa., having preserved the lien of their debts by bringing suit within the year, each filed a bill in equity to set aside the above conveyances as being fraudulent in law and void as against creditors. These proceedings are entered in Equity Docket No. 7, pages 382 and 396, Common Pleas of Lancaster County. The above cases being heard together, the following decree was entered by the Court of Common Pleas sitting in equity:

"And now, March 9, 1929, it appearing to the court that the bill of complaint in the above case was duly served, and that defendant, George C. Lamparter, has not appeared or filed any answer, and the other defendants named therein appeared by counsel, but have filed no answer to the bill, and that on March 3, 1928, on motion of the plaintiff, the allegations of the bill were taken *pro confesso* for want of an answer to said bill, it is ordered and decreed as of March 3, 1928, *nunc pro tunc*, that each and all of the conveyances described in the said bill of complaint were fraudulent and void as to the plaintiff; and further that the defendants Elizabeth D. Lamparter and George C. Lamparter, shall each forthwith execute and deliver to Catharine B. Lamparter, administratrix of J. George Lamparter, also known as George Lamparter, deceased, a deed of conveyance of all their right, title and interest in the respective premises conveyed by the said J. George Lamparter, also known as George Lamparter, to them respectively as averred in said bill of complaint for the purpose of having the said premises sold under an order of the Orphans' Court for payment of debts of the said J. George Lamparter, also known as George Lamparter, which may legally share in any proceeds of said decedent's real estate.                    BY THE COURT."

In accordance with the above decree, the several properties were reconveyed by the grantees to the administratrix of the decedent. They were afterwards sold under order of the orphans' court for the payment of such of decedent's debts as were a lien on his real estate.

In the second account of the administratrix now before us, she charges herself with the proceeds of the sale of properties Nos. 229-231 Howard Avenue, Lancaster, Pa., $3800 (these were the Howard Avenue properties conveyed to George C. Lamparter), and also with the proceeds of the sale of the property on East Orange Street, $4980 (the property conveyed to Elizabeth D. Lamparter). The Locust Street property was not sold by the administratrix, and it would seem that George C. Lamparter could have the same reconveyed to him.

The balance in the hands of the accountant was $8177.30, all being the proceeds of the sale of the above properties conveyed in pursuance of the decree in the equity court. In the distribution the court, after awarding the Conestoga National Bank and the Agricultural Trust and Savings Company the balances due them (these being the only creditors that had preserved their liens on the real estate), awarded one-third to the widow, and, after the payment of a counsel fee in the equity proceedings, divided the balance among the seven children of the decedent. It is agreed the grandson was overlooked. He would undoubtedly participate as an heir with the children, unless the legal conclusion of the court, under the facts, bars all except Elizabeth D. Lamparter and George C. Lamparter, as will hereafter appear. Exceptions were filed, alleging that the court erred in not awarding to Elizabeth D. Lamparter and George C. Lamparter the entire balance as their proportionate interests may appear. It is claimed that under the above decree their conveyances were fraudulent only as to creditors and were valid against the heirs of the decedent. They contend, therefore, that the balance in hand, after the payment of such debts as were a lien on the real estate, and one-third to the widow, equitably belongs to them. This calls for a determination of the legal effect of the decree of the equity court hereinbefore recited in full.

Generally speaking, a claimant in the orphans' court must claim either as creditor, legatee or next of kin, and an adverse claim of ownership of assets of a decedent cannot be asserted in the orphans' court: McBride's Appeal, 72 Pa. 480; Moore's Estate (No. 1), 211 Pa. 338. There are, however, excep-

tions to this general rule, and it has been held that a mistake in erroneously including in the account something shown to belong to another may be corrected (Malone's Estate, 8 W. N. C. 179), and that trust property may be followed anywhere: McCarron's Estate, 15 W. N. C. 485. It has also been held that the orphans' court, "within the scope of its jurisdiction, has all the powers of a court of equity (Dundas's Appeal, 64 Pa. 325; Carney v. Merchants' Union Trust Co., 252 Pa. 381), and appeals from it are to be heard and determined by us 'according to the justice and equity thereof:' . . . Shelley's Estate, 288 Pa. 11:" Nimlet's Estate, 299 Pa. 359.

The bill of complaint in the equity proceeding was instituted by two of decedent's creditors. When the grantees in the deeds were directed to reconvey the real estate to the administratrix for the purpose of selling it to pay debts, this was done for the benefit of the two creditors—complainants in the bill in equity. It was decided in Fowler's Appeal, 87 Pa. 449, syllabus 4: "The deed in controversy was only void as to the complaining creditors. The quiescent creditors, if there be any, cannot take advantage of this proceeding, and after the payment of the claims of the complainants in the bill, the land should be relieved from the injunction."

"Generally speaking, property which has been assigned or conveyed by the deceased, after the manner of a gift, confers a title upon the donee or grantee subject to the demands of prior existing creditors of the estate:" Chester County Trust Co. v. Pugh, 241 Pa. 124, 128.

Under the Fraudulent Debtors' Act, a deed made by a decedent in his lifetime was a fraud on his creditors if insolvent at the time of the conveyance. The deed could be declared fraudulent on petition of creditors, as above stated. It could be declared fraudulent on the complaint of the administrator if the deceased died insolvent, as decided in Chester County Trust Co. v. Pugh, supra.

In the light of the above authorities and others that might be cited, we are justified in drawing the following legal conclusions: As against all persons except his creditors, the decedent's deeds to two of his children were perfectly valid. He had a right to sell or give to any of his children any or all of his real estate; and none of his children could challenge the validity of the conveyance, conceding, of course, his competency and the absence of duress. Their invalidity related only to his insolvency and his creditors. The complainants in the bill in equity might very well have asked from the court a decree directing them to pay these debts, and if this had been done and the debts had been paid, the integrity of the deeds would have been maintained and the title to the real estate would have remained in the grantees. For undoubtedly, after the decedent's debts were paid, as against all the world, including his heirs, the title of the grantees was valid. This being so, can it be held that they lost their equity in the real estate because they obeyed the decree of the court of equity and reconveyed the properties to the administratrix of the decedent to sell to pay his debts? The complainants might have had the court in its decree reserve to the grantees all equity remaining after the payment of decedent's debts. Conceding that the grantees had a vested interest in the land after the payment of the decedent's debts and not required for that purpose, it must follow they have the same right to the proceeds of the sale of the real estate not needed for decedent's debts. This latter conclusion follows as a legal consequence of the former. To hold otherwise would be inequitable and unjust. As the other heirs raised no objection to the deeds made in the lifetime of decedent, so they can have no valid objection to the title of the grantees to the balance of the fund now being distributed, which

represents their equity in the real estate after it has been sold to pay the decedent's debts. There was error in the distribution. The balance should be awarded to George C. Lamparter and Elizabeth D. Lamparter in the proper proportions.

The exceptions are sustained and distribution will be made accordingly.

### Reformed distribution.

| | | |
|---|---|---|
| To Zimmerman, Myers & Kready and John A. Coyle, Esqs., counsel fee.................................... | | $200.00 |
| To Clerk of Orphans' Court, costs..................... | | 10.50 |
| To the Agricultural Trust & Savings Company, creditor. | | 2493.51 |
| To the Conestoga National Bank of Lancaster, Penna., creditor ............................................ | | 3452.62 |
| To the Register of Wills, transfer inheritance tax....... | | 10.80 |
| To Christine Lamparter, one-third..:........... | $740.22 | |
| Less transfer inheritance tax............... | 10.80 | |
| | | 729.42 |
| To George C. Lamparter, creditor..................... | | 554.18 |
| To Elizabeth D. Lamparter, creditor.................. | | 726.27 |
| | | $8177.30 |

As reformed, the adjudication is confirmed absolutely.

From George Ross Eshleman, Lancaster, Pa.