## Mercer's Estate.   Hommel's Appeal.

Argued January 15, 1935. Before SIMPSON, KEPHART, SCHAFFER, DREW and LINN, JJ.

*Robert T. McCracken*, with him *Edward G. Taulane, Jr.*, and *John F. Headly*, of *Montgomery & McCracken*, and *Thomas Ross*, for appellant.

*Thomas Stokes*, with him *Ernest Scott*, of *Pepper, Bodine, Stokes & Schoch*, and *Isaac J. Vanartsdalen*, for appellees.

OPINION BY MR. JUSTICE SIMPSON, February 4, 1935:

In the Orphans' Court of Bucks County (in which county the will of Henry C. Mercer, deceased, was probated), appellant filed a petition under the Declaratory Judgments Act of June 18, 1923, P. L. 840, against the trustees of a fund of $100,000, provided for in testator's will and known as the Chinese Expedition Fund, and against the Bucks County Historical Society, which was

also interested in the fund, praying for a declaratory decree determining the rights of petitioner as respects the fund. Answers were filed by respondents, testimony taken, followed, after argument, by a carefully thought out opinion; from the decree based thereon this appeal was taken. In the main we are in accord with the opinion and decree, but we cannot agree that petitioner occupies so subordinate a position in regard to the fund as is stated in that decree.

In speaking of testator, the court below well said: "He was intensely interested in the arts and crafts of the early races of mankind. He studied and preserved for future generations the tools and implements of labor and manufacture of primitive peoples. Research, recovery and preservation became with him not a fad, but a life work. To preserve for the enlightenment and benefit of mankind became the moving passion of his life." We agree also with the trial judge's statement, that testator "engaged [appellant] because of his fitness for the work and his willingness to bear the hardships of the work in the field. He [testator] desired [appellant's] coöperation in the arrangement and compilation of the fruits of his research." Only in the light of these facts, and of an agreement between testator and appellant, now to be stated, can we reach a true understanding of the meaning of the language of testator's will in relation to the Chinese Expedition Fund. This is in accord with the unbending rule in relation to the interpretation of all agreements. "An agreement is the assent of two minds to the same thing. It should be construed in the light of the facts and circumstances under which the parties contracted. These form a sort of context that may be properly resorted to as an aid in interpreting the contract, to the end that the objects and purposes of the parties may be carried into effect": Nimlet's Est., 299 Pa. 359; Hild v. Dunn, 310 Pa. 289.

The agreement entered into by and between appellant and testator, was evidently written by the former, but is

executed by both of them. It was recorded at the American Consulate General at Hankow on May 26, 1926, in book of miscellaneous records, volume 5, pages 91-3, and is as follows:

"Expedition devised in 1921 by Dr. H. C. Mercer [testator] and paid for by him, to be conducted under his direction by R. P. Hommel [petitioner] for the purpose of photographing, drawing and describing as nearly as possible all the ancient tools, utensils and things devoted to the uses of man in China and the Far East, and placing the material obtained into the archives of the Bucks County Historical Society at Doylestown, Bucks County, Penna., U. S. A., and finally editing and publishing the same as part of the work of the said society, before the knowledge of these things, owing to the introduction of modern processes by western nations, shall have been forgotten.

"Expedition begins when I, R. P. Hommel, return, from Germany upon arrival in the United States. Passage of Mrs. Hommel and Waldemar now to be paid from expedition but, should they later join me in China, amount of this, their passage to Germany and return, to be returned by me to the expedition. Between now, March 2, 1921, and my return to United States from Germany a preliminary payment of $225 per month to be paid to me for general maintenance of self and family in the meantime. On my return to United States from Germany the basis of payment changes and then takes the final form of an available sum, indefinite in amount, placed at my disposal from which I draw for the purposes of the expedition, and subsequently accounted for by me to Dr. Mercer three times a year, namely January, May and September. This fund shall be placed in a bank in China on my arrival there and used for the following purposes:

"1. For all the purposes of the expedition proper and its furtherance.

"2. For my own board, lodging, clothing and maintenance.

"3. For the board, lodging, clothing and maintenance of my family including education of my children, whether in China or Germany.

"It being reasonably understood that strictly personal expenses such as jewelry, entertainments not benefiting the expedition, amusements, whether incurred by myself or family, shall not be charged to the expedition.

"Should my wife and family join me in China their passage from New York to China shall be paid for by the expedition.

"At present therefore, March 2, 1921, Dr. Mercer will pay to me the following sum:

"1. Two hundred twenty-five dollars to retain me as it were for the expedition.

"2. Two hundred fifty dollars to complete the sum, namely $150 already paid for my own passage to Germany and return.

"3. Three hundred dollars to pay for the passage of my wife and child to Germany, one way, in all therefore the sum of $775. Add to this $15 being tax of $5 for each outgoing ticket. Total $790 now paid me by Dr. Mercer.

"The sum of $405 thus devoted to my passage money to Germany and return to the United States, including tax above mentioned I regard as loaned to me from the expedition, and to be deducted from my first year's salary.

"Over and above the sums paid me for the purposes of the expedition, as mentioned above and accounted for by me three times a year, the further sum of $800 per year, as a personal salary will be paid me by Dr. Mercer in three yearly installments, namely, January, May and September.

"Dr. Mercer finally proposes that on my return from Germany to the United States he will write a codicil to his will devoting what he considers to be an adequate sum of money for the continuance of this expedition in case of his death, or my death, or withdrawal, and to be

devoted thereto by his trustees, so that the very important work, here originated, of recording by means of photographs, notes and drawings for the sake of future students of the ancient life and industries of China and the Far East, shall not stop until it is reasonably completed and its material placed in the archives of the Bucks County Historical Society in Doylestown, Penna., U. S. A. After which if possible the photographs and drawings shall be reduced to half tones or other cuts and together with the notes printed under supervision of myself or a successor, chosen by said trustees, if necessary, owing to my [petitioner's] death or withdrawal.

"In case of Dr. Mercer's death, or my own death or withdrawal from the expedition, the passage money of my wife and family, if then in China, to United States or Germany, including their maintenance in the interim is to be paid from the above mentioned devised sum by Dr. Mercer's trustees.

"Agreed to March 2, 1921, by

"(S) H. C. Mercer.
"(S) R. P. Hommel."

In compliance with his agreement, contained in the above contract, testator provided in his will as follows:

"Whereas the tools, implements, utensils still employed in daily life in China and other countries of the Far East, have been in use for a very long time, and whereas to the great loss of students of history and Archæology these things and their uses will probably soon be superseded or abandoned, owing to the alteration in social and economic conditions introduced there by western nations, and whereas photographs and drawings of these things accompanied by descriptions of their use would be of great value to the future study of history and Archæology, and whereas I have equipped, sent out and maintained in the year 1921, an expedition conducted by Mr. Rudolf P. Hommel, late of the American-Electro Chemical Society of Lehigh University, Bethlehem, Pennsylvania, U. S. A., to study, photograph, describe and by

means of pictures, photographs and descriptions sent
home by him and preserved in the Archives of the Bucks
County Historical [Society] to finally publish for the
use of said Society in print and by means of photo-en-
gravings made from said photographs, a final illustrated
record of these things, therefore I, Henry Chapman Mer-
cer, in reverence and memory of my Uncle Timothy Big-
elow Lawrence and of his wish that the Cause of Science
advanced by his family as in their foundation of the
Lawrence Scientific School at Harvard University,
should be promoted by his heirs, give and bequeath the
sum of One hundred thousand ($100,000) dollars to be
set aside by my executors and paid out or caused to be
paid out by them, either in interest or principal, as it may
be necessary to the said Rudolf P. Hommel now conduct-
ing this expedition, or his successors, for photographic or
other equipment, traveling expenses, servants expenses,
living and household expenses of himself and family, sal-
ary of himself and all other expenses connected with said
expedition, the photographing of objects, collecting and
transporting of notes, photographs and other material,
placing and classifying the same in the Archives of the
Bucks County Historical Society and finally publishing
the same as before described and as set forth in my con-
tract with Mr. Rudolf P. Hommel, now in my possession,
dated March the Second, 1921.

"And I further desire that if, for any reason, this work
should be interrupted in China or could not be fully com-
pleted there, or if for the further extension of its purpose,
it may seem advisable, I desire that the work of said ex-
pedition may be continued in other countries, not only in
the Far East, but in other parts of the world, and further
that if, at the reasonable completion of the work of said
expedition, any part of the sum herewith bequeathed by
me for the said expedition remain unexpended, that such
remaining money shall be given to the Publication Fund
of the Bucks County Historical Society.

"I also desire that the Archives, consisting of the above described original pictures and notes preserved in the Museum of the Bucks County Historical Society or their duplicates elsewhere preserved, shall, upon the cases or in the room containing them, in some conspicuous place be named and dedicated as follows, to wit: Records of Chinese, Oriental, and other Primitive Industries dedicated to the memory of Timothy Bigelow Lawrence of Boston, by Henry Chapman Mercer, and that the original illustrated manuscripts and also the book or books above mentioned, publishing and illustrating the said collection of original illustrated manuscripts shall be named and dedicated as follows, to wit: Records of Chinese, Oriental and other Primitive Industries, being the results of an Expedition begun in the year 1921 and planned, equipped and directed by Henry Chapman Mercer. Dedicated to the Memory of Timothy Bigelow Lawrence of Boston by his nephew, Henry Chapman Mercer."

Out of the foregoing provisions of the contract and will, the rights of appellant and the duty of the trustees are to be determined, and it is clear therefrom that petitioner's rights are far greater than determined by the court below, viz., that of an employee who may be discharged by the trustees "for cause or at will."

Turning to the contract, the first thing that appears clearly and beyond peradventure is that testator, who knew more about the subject than the court below, or the trustees under the will, or ourselves, had a very high regard for petitioner's ability respecting the work he was expected to do. This is, indeed, a fact which the writings clearly state over and over again. The contract stipulates that the "expedition [is] . . . to be conducted under [testator's] direction by [petitioner]" and stipulates in detail of what the work is to consist. It further provides that before "petitioner's return to the United States from Germany [where petitioner was when the contract was drawn] a preliminary payment of $225 per month to be paid to [petitioner] for general maintenance of [peti-

tioner] and his family in the meantime. On [petitioner's] return to the United States from Germany the basis of payment changes, and then takes the final form of an available sum indefinite in amount, placed at [petitioner's] disposal from which [petitioner may] draw for the purposes of the expedition, and subsequently accounted for by [petitioner] to [testator] three times a year." The contract further provides that the work to be done "shall not stop until it is reasonably completed and its material placed in the archives of the Bucks County Historical Society."

By his will, made, as already stated, in fulfilment of his agreement set forth in the above quoted contract, he directed "$100,000 to be set aside by my executors and paid out or caused to be paid out by them, either in interest or principal, as may be necessary to [petitioner] now conducting this expedition, or his successors" for the work which he was engaged to do.

We do not interpret the words "or his successors," to give to the trustees of the fund the right to dismiss appellant from his position when and as they please, but rather, as twice expressed in the contract, which, by recital is incorporated into the will, to "a successor chosen by said trustees, if necessary, owing to my [petitioner's] death or withdrawal," and the sole condition to which the word "necessary" refers in said contract, is in case of "my [petitioner's] death or withdrawal." Nowhere else in either contract or will, is the word "successors" defined. Hence, this definition must be accepted and applied wherever necessary in construing either instrument. This being so, it completely overthrows the contention of the trustees, as set forth in their answer to the petition, viz.: "In short, trustee respondents aver that if, in trustees' judgment, [petitioner] fails to do the work of the expedition . . . in a manner satisfactory to the trustees, petitioner, in the proper discretion of the trustees, is subject to discharge and dismissal, and the respondents are charged with the duty of selecting his successor to carry out the

purpose of the trust." And it is also a complete answer to so much of the seventh paragraph of the decree of the court below, already referred to, as says that petitioner is subject to discharge by the trustees "for cause or at will."

It will also be noted from the above quoted portion of the will that testator directs a continuation of the work of the expedition by petitioner, if interrupted in China, then "in other countries, not only in the Far East, but in other parts of the world."

Enough has been said to show that instead of petitioner being required to do the work "in a manner satisfactory to the trustees," he is required to do it in accordance with the will of testator, when interpreted in the light of the contract recited in it, and is entitled to be paid therefor as provided in said documents. If he does not, he is liable to removal, subject however to approval or disapproval by the Orphans' Court of Bucks County.

So far as the declaratory decree of the court below is inconsistent with this opinion it is reversed and set aside, and the record is returned that a declaratory decree may be entered in accordance with the views herein expressed.

Costs are to be paid out of the fund.