## Cascassi Estate

*Elmer L. Menges*, for accountant.

HOLLAND, P. J., March 19, 1948.—Decedent died intestate on August 28, 1946, and letters of administration were granted September 6, 1946, to Elmer S. Shelly, he being the undertaker that buried decedent. The only known heir-at-law of decedent is his surviving spouse, Elizabeth Cascassi, who resides in Cessanti, Italy, P. R. Catanzaro. She is the only known heir of decedent entitled to the entire balance for distribution.

The account shows no balance for distribution, the same having been consumed in administration expenses, medical and hospital expenses, and the cost of the funeral. However, since the court is disallowing the credit for the entire funeral bill in the sum of $830, by reducing it to $400, and reducing the counsel fee by $62.06, there will be a balance for distribution on account of said surcharges of the accountant, of $492.06, which will be composed of cash reimbursed to the estate by the accountant.

The total gross amount of the estate is, according to the debit side of the account, $1,146.38. A glance at the funeral bill for which credit is taken on the credit side of the account in the sum of $830 is sufficient to denote that it is entirely extravagant and out of all proportion to the size of this estate. This funeral bill of $830 is approximately three quarters of the total gross estate. No objection is raised to any item

in the account for the obvious reason that the only beneficiary, who is the surviving wife of decedent, resides in Italy, and the difficulties of raising any objection by her is apparent. Nevertheless, no court, to whose attention this accounting is officially drawn, could overlook this patent, unlawful, and extravagant dissipation of a decedent's estate by the simple process of furnishing a funeral at a cost out of all proportion to the size of the estate. To do so would only create a vicious precedent to justify the deliberate consumption of estates under similar circumstances by rapacious undertakers. On the other hand, the imposition of substantial surcharges for such wilful consumption of estates may serve as an effective warning to undertakers generally to exercise some moderation in the furnishing of funerals and take greater precautions in inquiring as to the extent of estates before furnishing the funerals to assure themselves that the funeral expenses are in reasonable proportion to the size of the estate.

The auditing judge is not precluded from questioning an exorbitant payment from an estate because there is no one to object to it. On the contrary, it is his duty even more so in such cases to reject an improper credit than when there are one or more interested parties, sui juris, who could object. In Mellon's Estate, 46 D. & C. 287, wherein the auditing judge allowed only $350 for funeral expenses where the funeral bill was $1,350 out of a total amount of gross estate of $1,779.82, Judge Waite, speaking for the court en banc upon exceptions filed by the undertaker stated:

"At the argument on the exceptions, attorney for claimant, although admitting that this bill was excessive, urged that inasmuch as no formal exceptions were filed to the claim the court had no authority to disallow any part of the claim.

"With this position we cannot agree. The essential purpose of the audit of an administrator's account is to determine under all the facts and circumstances whether or not claims against a decedent's estate are just and proper, and, if allowed, in what amount. That purpose is not only the right, but the duty, of the court to perform. It would be a travesty of justice indeed if grossly exorbitant charges, such as the ones here in question, could not be reduced to a fair amount, or wholly disallowed if necessary, merely because no formal objections have been filed thereto. Within the scope of its jurisdiction the orphans' court has and should exercise the powers of a court of equity: Nimlet's Estate, 299 Pa. 359. When the orphans' court once obtains jurisdiction of a subject, it takes cognizance of and decides all matters necessary to a full and final determination of the whole matter: Crawford's Estate, 12 Wash. Co. 33. See also Dundas' Appeal, 64 Pa. 325."

In the original opinion in this case where he sat as the auditing judge he stated on this point as to the duties of an auditing judge the following:

". . . The mere fact that the decedent left no relatives, if such is the case, does not justify the use of his entire estate in providing an elaborate funeral not in keeping with the size of his estate and his station in life. If no one else objects to such expenditure it is the duty of the fiduciary to do so, and if he does not the court will. A funeral director, in the absence of an authorization by decedent or his family, will be permitted to recover for funeral expenses only for such charges as are reasonable in view of the station in life of such decedent and not disproportinate to the size of his estate. See In re Ennis' Estate, 76 Pa. Superior Ct. 292, and Cocca's Estate, 11 Erie 179."

Another aggravated circumstance in this case is that the undertaker who furnished this extravagant and disproportionate funeral is the accountant, having

taken out letters of administration. From the photostatic copies of the order for the funeral and the bill and the dates thereon, furnished by counsel for the accountant, and from statements made by counsel for the accountant, as to his knowledge of the history of this case, the chronology of the events may be related.

Decedent died August 28, 1946. The next day, August 29, 1946, Felippo Vangeli, the man with whom decedent had resided, went to the undertaker, Elmer S. Shelly, who is also the administrator, and ordered this funeral. The date August 29, 1946, is on this order, a photostatic copy of which is hereto attached. This order is signed by Felippo Vangeli and the various items filled in on a printed form. The bill, a photostatic copy of which is hereto attached, which is the bill of the undertaker, is marked, "Paid in full, 10-22-46, Elmer S. Shelly." So that on that date the administrator as administrator evidently paid himself as undertaker the bill in full. Sometime between the contracting of the bill and the payment of it, the undertaker buried decedent, apparently between August 28, 1946, the date of his death, and September 6, 1946, when letters of administration were granted to the undertaker, Elmer S. Shelly. Sometime after the funeral, the undertaker went to the bank which was Ambler National Bank to draw out the money and was told that he could not get the money without letters of administration. It was here that the present counsel for the accountant came into the case. The undertaker accordingly took out letters of administration and entered the necessary bond.

The gross estate consists of two savings accounts in Ambler National Bank in the total sum of $1,146.38. The disbursements are exclusively administration expenses, counsel fee, commission to the administrator (also the undertaker), hospital and doctor bills of an insignificant sum, and this disproportionate funeral bill. The auditing judge in the Mellon Estate, supra, allowed a funeral charge of $350 where the gross estate

was $1,779.82 (some $600 more than the gross estate in this case). However, I will not be so drastic in this case, and the allowance for the funeral bill is reduced from $830 to $400, and the administrator surcharged with the difference of $430. In the Mellon case, supra, there is every indication that the balance for distribution would escheat to the Commonwealth as no heirs had been discovered. In this case, the surviving wife as the sole heir of decedent has been discovered, identified, and her address and location ascertained. There may be some reason for this court being more drastic than the auditing judge in the Mellon case, but I am of the opinion that the action which I am taking is proper under the circumstances.

In the exercise of the responsibilities thrust upon me as auditing judge, as hereinabove indicated, I must give some attention to the counsel fee charged in the account in the odd sum of $162.06, which seems to have exactly balanced the account. The gross estate is just $146 above the limit of a thousand in which the minimum fee bill provides the fee to be $50. But even putting it in the class between $1,000 and $2,000 designated in the fee bill, which bracket it just barely reaches, the fee bill provides a fee of $75. In this case the fee is more than double the minimum fee for estates in this bracket. I see no possibility of any extraordinary services in this case. The entire gross estate was entirely cash in bank and it must have been a comparatively simple matter to prepare this one page account, although it has been properly and expertly done and in full compliance with our rule of court in regard to the segregation of items. If I allow $25 in excess of the amount provided by the minimum fee bill, I am of the opinion that counsel will be amply compensated, therefore this fee is allowed in the sum of $100, and the accountant is surcharged in the sum of $62.06. These two surcharges bring about a balance for distribution in the sum of $492.06, which is awarded to Elizabeth

Cascassi, the surviving wife of decedent, and his sole heir-at-law, to be paid to her through the Italian Consul General to whom it shall be directed to be transmitted to her through the usual channels.

As modified by this adjudication, the account is confirmed, and it is ordered and decreed that Elmer S. Shelly, administrator, as aforesaid, forthwith pay the distribution herein awarded.

And now, March 19, 1948, this adjudication is confirmed nisi.