## In re Halohan Petition

Before Milner and Mawhinney, JJ.

*Richard T. McSorley*, for petitioners.

MAWHINNEY, J., May 23, 1952.—The petition filed in this matter seeks an order from this court directed to the bureau of vital statistics in the Department of Health ordering amendment and correction of the birth certificate of petitioners' child. As to the facts herein it is sufficient to note that when petitioners' child was born in Philadelphia petitioners caused the child's name to be registered in the bureau of vital statistics incorrectly; that subsequently a request was made of the bureau to correct the birth certificate but that the bureau refused to do so without a court order.

We initially refused to issue a rule to show cause on the basis of the petition presented because we were of the opinion that this court was without jurisdiction to entertain the matter; that the orphans' court had *exclusive* jurisdiction in matters pertaining to birth records. Subsequently counsel for petitioners informally advised this court that the orphans' court also refused to entertain such petition. We therefore allowed a rule upon the director of the bureau of vital statistics to show cause why the birth registration record of petitioners' child should not be amended as prayed for, which rule is now before us for disposition. Petitioners are entitled to an expression of judicial opinion on their petition. Service of a copy of the petition and rule was made upon the director of the bureau of vital statistics by registered mail. A brief has been filed on behalf of the petitioners contending

that we have jurisdiction; no brief was filed by or on behalf of the bureau of vital statistics, nor has any appearance been made on the Commonwealth's behalf.

The only question we need consider is whether this court has the power, i.e., jurisdiction, to entertain a petition seeking an order, directed to the bureau of vital statistics, to amend and correct a birth record.

Article III of the Orphans' Court Act of August 10, 1951, P. L. 1163, sets forth the jurisdiction of the orphans' court, inter alia, as follows:

"Section 301. Exclusive Jurisdiction.—The Orphans' Court shall have exclusive jurisdiction of: . . . (15) *Birth Records.* Matters relating to birth records, as provided by law."

We consider this language clear and unambiguous in its statement that the nature of the orphans' court's jurisdiction is *exclusive* in matters pertaining to birth records. It is however contended by petitioners that the last four words "as provided by law" render the sentence simply a restatement of existing jurisdiction according to the then existing statutes in relation to birth records; that there is no statute expressly vesting in the orphans' court jurisdiction to entertain a petition *to amend and correct a birth record* in the bureau of vital statistics; that the orphans' court therefore has no such jurisdiction and the courts of common pleas must have such jurisdiction since they are constitutional courts of *general* jurisdiction.

Section 301 of the Orphans' Court Act of 1951 obviously intends to set forth those subjects over which that court shall have *exclusive* jurisdiction as distinguished from section 302, which refers to an area of that court's concurrent jurisdiction. Petitioners would have us read section 301 (15) as though it stated "The Orphans' Court shall have exclusive jurisdiction, as provided by law, of matters relating to birth rec-

ords". We do not think the words "as provided by law" were intended to modify the orphans' court's exclusive jurisdiction over the subject matter but is simply a prepositional phrase limiting the scope of the *exclusive* power to be exercised by the court to such power as has been lawfully delegated whether by statute or case law. Petitioners contend that the comment of the Procedural Rules Committee to section 301(15) indicates that no new powers have been conferred on the orphans' court; that since the power to order *correction* of a certificate is nowhere conferred on the orphans' court, such power must be deemed to reside in the common pleas courts as courts of general jurisdiction. The committee's comment is as follows (after reference to the statutes giving jurisdiction to the orphans' court in certain matters of birth records:

"Clauses 15-18 are included in this section for purpose of notice only. The subjects are covered by separate statutes and there is no intention to interfere therewith."

Clauses 15 to 18 refer to exclusive jurisdiction of the orphans' court in relation to birth records (clause 15), adoptions (clause 16), marriage licenses (clause 17), and inheritance and estate taxes (clause 18), and the last four words of *each* clause are "as provided by law". We do not think these words cut down the nature of the orphans' court's exclusive jurisdiction. We may note that the legislature did not rely upon such words when it did not intend the orphans' court to have exclusive jurisdiction because immediately following clause (18) it was provided:

"The provisions of clauses (8) and (16), in so far as they relate to adoptions, shall not apply to the Orphans' Court of Philadelphia County. Exclusive jurisdiction in the matter of adoptions shall remain in the Municipal Court of Philadelphia."

We need not decide whether the orphans' court has the power to entertain the particular type of petition which has been presented to us; it is sufficient to observe that the history of legislation [1] on this subject and the present Orphans' Court Act indicates that *such jurisdiction as exists* with regard to birth records has been exclusively vested in the orphans' court and the courts of common pleas have no power in the matter. The Act of July 16, 1941, P. L. 383, 35 PS §481-484, deals with delayed registrations of birth. Section 3 of this act (35 PS §483) provides for an appeal *to the orphans' court* of the county in which any aggrieved person resides from a refusal of the bureau of vital statistics to record and issue such birth certificate.

The Act of July 16, 1941, P. L. 405, as amended by

---

[1] Upon a consideration of the history of the birth registration system in this Commonwealth it becomes apparent that the legislature has consistently regarded the orphans' court as the proper tribunal for the consideration of matters relating to birth certificates. The Act of April 14, 1851, certified as law on January 12, 1852, P. L. 2, is apparently the first statute to make general provision for the registration, inter alia, of birth in this Commonwealth. This statute provided in its preamble and section 1 as follows:

"Whereas, From the death of witnesses, and from other causes, it has often been found difficult to prove the marriage, birth, or death of persons, whereby the rights of many have been sacrificed, and great wrongs have been done:

"And whereas, Important truths, deeply affecting the physical welfare of mankind, are to be drawn from the number of marriages, births, or deaths that during a term of years may be contracted or may occur within the limits of an extensive Commonwealth; therefore,

"Section 1. *Be it enacted by the Senate and House of Representatives of the Commonwealth of Pennsylvania in General Assembly met, and it is hereby enacted by the authority of the same,* That from and after the first day of July next, each register of wills in the several counties of the State shall be supplied with separate books, in which he shall register, in the manner hereinafter directed, the marriages which may have been contracted, and the births and deaths which may have occurred within his county."

the Act of May 21, 1943, P. L. 377, sec. 1, 35 PS §491-496, provides for recording births or *correcting* records of birth in the orphans' court for persons born in Pennsylvania prior to June 1, 1906. Neither of these statutes refers specifically to the correction or amendment of birth records of persons born in Pennsylvania *after* January 1, 1906. The only reference we have found to any right to amend or alter a birth certificate is in section 17 of the Uniform Vital Statistics Act of May 21, 1943, P. L. 414;[2] 35 PS §§505.1 to 505.37 (and see sections 18 and 20(2). Section 17 (35 PS §505.17) provides:

"A person born in this State may file or amend a certificate after the time herein prescribed upon submitting such proof as shall be required by the department."

There is no provision set forth in the Uniform Vital

---

In section 5 of this act it was provided:

". . . That should any person feel aggrieved at the decision of the register aforesaid, he or she, or as the case may be, the next friend or the representative of the person, on whose behalf such application is made, shall have the right of an appeal to the Orphans' Court of the proper county, in which case the testimony so taken shall be sent up with the appeal to the said court, by the said register, accompanied by a written statement of his reasons for rejecting it as insufficient."

And see section 9 for reference to the right of appeal for neglect to register, inter alia, births "in the proper form".

The Act of June 6, 1893, P. L. 340, provided for a system of registration of births and deaths in the several counties of the Commonwealth, the records to be kept by the clerk of the orphans' court of each county. No doubt the orphans' court could have and may have directed its clerk to correct erroneous entries, certainly the court of common pleas would not direct such order to the orphans' court's clerk. See also Act of June 6, 1907, P. L. 422; Act of May 1, 1905, P. L. 330; Act of June 24, 1895, P. L. 246; Act of June 3, 1885, P. L. 56, providing for supervision of "state system of registration of births . . ." by the State Board of Health and Vital Statistics supplied by the Act of April 27, 1905, P. L. 312 creating Department of Public Health.

[2] The amendments of April 9, 1945, P. L. 166, sec. 1, and June 10, 1947, P. L. 512, sec. 1, are not pertinent to our inquiry.

Statistics Act of 1943 for any appeal in the event an amendment is improperly rejected by the department. The only other act pertaining to birth registration presently on our statute books to which we need refer is the Act of June 7, 1915, P. L. 900, as amended, 35 PS §§451-474, which presently regulates registration of vital statistics including births; there is no reference in this act to any method of appeal from action or inaction of the Department of Health.[3]

None of the statutes presently in force confers any right to appeal a refusal of registration or amendment from the Bureau of Vital Statistics to this court. Assuming that the orphans' court does not have jurisdiction in this matter, then no relief is available to petitioners *in this county*. The only recourse petitioners could have, *if any*, would be to appeal under the provisions of the Administrative Agency Law of June 4, 1945, P. L. 1388, which specifically limits such appeal to the Court of Common Pleas of Dauphin County; in no event would the Courts of Common Pleas of Philadelphia County have jurisdiction. See also Pennsylvania Rules of Civil Procedure 2102(*b*), 2103(*b*) and 2104(*b*).

The suggestion of petitioners that other courts of common pleas have approved petitions of the type before us and that the bureau of vital statistics is willing to obey any order that we may render cannot be considered. Jurisdiction cannot be conferred upon this court by consent of the parties; nor does past unauthorized or improper exercise of jurisdiction create jurisdiction. The bureau of vital statistics has the duty to maintain *true and correct records* of births in this Commonwealth; it cannot avoid the responsi-

---

[3] For further reference to the duty of the Department of Health to supervise birth registration see Administrative Code of April 9, 1929, P. L. 177, sec. 2104, 71 PS §534; Act of April 27, 1905, P. L. 312, sec. 10, 71 PS §1405.

bility of decision by consenting to orders which we have no right to make.

The anomalous nature of this proceeding is indicated by the failure or refusal of the bureau of vital statistics to make any appearance or present any argument in this matter. We are satisfied that the dispatch of a registered letter to the bureau had no jurisdictional value and was mere informal notice at best. We will not enter orders the enforcement of which is beyond our power. The principle is settled that a rule to show cause is not, in the absence of statutory authority, to be used as original process in any case, but is to be used auxiliary to and for the purpose of facilitating jurisdiction which has already been acquired. Before a court can grant or enforce a rule against any party, it must first have acquired jurisdiction over him by some regular and recognized legal process: see on this subject Howard J. Short v. Board of the School District of Upper Moreland Township, 108 Pa. Superior Ct. 503 (1933) ; Petrovich Appeal, 155 Pa. Superior Ct. 138 (1944) ; Schuettler v. Maurer, 159 Pa. Superior Ct. 110 (1946) ; Pierce v. Conner, 4 Pa. C. C. 219 (1888) ; Commonwealth v. Clearfield County et al., 57 D. & C. 74 (1946) ; Mitchell on Motions and Rules, page 11; 2 Standard Pa. Practice, Motions and Rules, sec. 22 and cases there cited. There is nothing before us which marks this case as an exceptional one for the employment of a rule as original process, and in most cases where a rule has been so used it was an exercise of the court's inherent power to correct its own records: Delco Ice Manufacturing Co. v. Frick Company, 318 Pa. 337 (1935) ; Macoluso's Naturalization, 237 Pa. 132 (1912) ; Automobile Banking Corporation v. Weicht, 160 Pa. Superior Ct. 422 (1947) ; Carey v. Carey, 121 Pa. Superior Ct. 251 (1936).

In setting forth our views it is not necessary for

us to purport to decide whether the orphans' court may in the equitable [4] exercise of the powers conferred upon it afford relief to petitioners in the circumstances. Until the legislature indicates that the common pleas courts have jurisdiction in matters pertaining to birth records, we cannot ignore the inference contained in the statutory law above reviewed that such jurisdiction as does exist is vested in the Orphans' Court or the Court of Common Pleas of Dauphin County.

For the reasons stated, we must discharge the rule to show cause issued in this matter without prejudice to petitioners' rights to proceed in such form as they may deem best.

---

[4] We, of course recognize that the orphans' court is not a court of general jurisdiction and that, it may exercise only those powers expressly granted to it by statute or which are necessarily incidental to any specific grant of power to it: Cutler's Estate, 225 Pa. 167 (1909). In Shollenberger's Appeal, 21 Pa. 337, 340-341 (1853), it was stated:

"Our Orphans' Court, a creature of the constitution, is essentially a Court of Chancery. Its powers, originally small, have by gradual accretion grown into great magnitude and importance, and, that they may be clearly understood, they should be conformed to some model, and regulated by known and established principles. The chancery jurisdiction is the model, and contains the principles most congenial to this institution, and the legislature have in very many instances sanctioned and enjoined the application of these principles to proceedings in the Orphans' Court. . . .

"The Orphans' Court is sometimes called a Court of limited jurisdiction. This is true, if regard be had to the *derivation* of its powers, for it possesses none inherently, and exercises such only as are conferred by or implied from legislation; and it is true also as to the *subjects* of its jurisdiction, for these are set down in the statutes; but within its appointed orbit its jurisdicion is exclusive, and therefore necessarily as extensive as the demands of justice."

See generally Mains' Estate, 322 Pa. 243, 246 (1936); Lonergan's Estate, 303 Pa. 142, 147 (1931); Nimlet's Estate, 299 Pa. 359, 368 (1930); Carney v. Merchants' Union Trust Co., 252 Pa. 381 (1916); Willard's Appeal, 65 Pa. 265 (1870); Dundas' Appeal, 64 Pa. 325 (1870); Weyand v. Weller, 39 Pa. 443 (1861); Brinker v. Brinker, 7 Pa. 53, 55 (1847).